BROADWAY NATIONAL BANK *vs.* CHARLES W. ADAMS
& another.

Suffolk.    November 17, 18, 1881; March 27. — June 29, 1882.

A person having the entire right to dispose of property may settle it in trust in favor of another, with the provision that the income shall not be alienated by the beneficiary by anticipation, or be subject to be taken by his creditors in advance of its payment to him, although there is no cesser or limitation of the estate in such an event.

MORTON, C. J.    The object of this bill in equity is to reach and apply in payment of the plaintiff's debt due from the defendant Adams the income of a trust fund created for his benefit by the will of his brother.    The eleventh article of the will is as follows : "I give the sum of seventy-five thousand dollars to my said executors and the survivors or survivor of them, in trust to invest the same in such manner as to them may seem prudent, and to pay the net income thereof, semiannually, to my said brother Charles W. Adams; during his natural life, such payments to be made to him personally when convenient, otherwise, upon his order or receipt in writing; in either case free from the interference or control of his creditors, my intention being that the use of said income shall not be anticipated by assignment. At the decease of my said brother Charles, my will is that the net income of

said seventy-five thousand dollars shall be paid to his present wife, in case she survives him, for the benefit of herself and all the children of said Charles, in equal proportions, in the manner and upon the conditions the same as herein directed to be ·paid him during his life, so long as she shall remain single. And my will is, that, after the decease of said Charles and the decease or second marriage of his said wife, the said seventy-five thousand dollars, together with any accrued interest or income thereon which may remain unpaid, as herein above directed, shall be divided equally among all the children of my said brother Charles, by any and all his wives, and the representatives of any deceased child or children by right of representation."

There is no room for doubt as to the intention of the testator. It is clear that, if the trustee was to pay the income to the plaintiff under an order of the court, it would be in direct violation of the intention of the testator and of the provisions of his will. The court will not compel the trustee thus to do what the will forbids him to do, unless the provisions and intention of the testator are unlawful.

The question whether the founder of a trust can secure the income of it to the object of his bounty, by providing that it shall not be alienable by him or be subject to be taken by his creditors, has not been directly adjudicated in this Commonwealth. The tendency of our decisions, however, has been in favor of such a power in the founder. *Braman* v. *Stiles*, 2 Pick. 460. *Perkins* v. *Hays*, 3 Gray, 405. *Russell* v. *Grinnell*, 105 Mass. 425. *Hall* v. *Williams*, 120 Mass. 344. *Sparhawk* v. *Cloon*, 125 Mass. 263.

It is true that the rule of the common law is, that a man cannot attach to a grant or transfer of property, otherwise absolute, the condition that it shall not be alienated; such condition being repugnant to the nature of the estate granted. Co. Lit. 223 *a*. *Blackstone Bank* v. *Davis*, 21 Pick. 42.

Lord Coke gives as the reason of the rule, that "it is absurd and repugnant to reason that he, that hath no possibility to have the land revert to him, should restrain his feoffee in fee simple of all his power to alien," and that this is "against the height and puritie of a fee simple." By such a condition, the grantor undertakes to deprive the property in the hands of the grantee of

one of its legal incidents and attributes, namely, its alienability, which is deemed to be against public policy. But the reasons of the rule do not apply in the case of a transfer of property in trust. By the creation of a trust like the one before us, the trust property passes to the trustee with all its incidents and attributes unimpaired. He takes the whole legal title to the property, with the power of alienation; the *cestui que trust* takes the whole legal title to the accrued income at the moment it is paid over to him. Neither the principal nor the income is at any time inalienable.

The question whether the rule of the common law should be applied to equitable life estates created by will or deed, has been the subject of conflicting adjudications by different courts, as is fully shown in the able and exhaustive arguments of the counsel in this case. As is stated in *Sparhawk* v. *Cloon*, above cited, from the time of Lord Eldon the rule has prevailed in the English Court of Chancery, to the extent of holding that when the income of a trust estate is given to any person (other than a married woman) for life, the equitable estate for life is alienable by, and liable in equity to the debts of, the *cestui que trust*, and that this quality is so inseparable from the estate that no provision, however express, which does not operate as a cesser or limitation of the estate itself, can protect it from his debts. *Brandon* v. *Robinson*, 18 Ves. 429. *Green* v. *Spicer*, 1 Russ. & Myl. 395. *Rochford* v. *Hackman*, 9 Hare, 475. *Trappes* v. *Meredith*, L. R. 9 Eq. 229. *Snowdon* v. *Dales*, 6 Sim. 524. *Rippon* v. *Norton*, 2 Beav. 63.

The English rule has been adopted in several of the courts of this country. *Tillinghast* v. *Bradford*, 5 R. I. 205. *Heath* v. *Bishop*, 4 Rich. Eq. 46. *Dick* v. *Pitchford*, 1 Dev. & Bat. Eq. 480. *Mebane* v. *Mebane*, 4 Ired. Eq. 131.

Other courts have rejected it, and have held that the founder of a trust may secure the benefit of it to the object of his bounty, by providing that the income shall not be alienable by anticipation, nor subject to be taken for his debts. *Holdship* v. *Patterson*, 7 Watts, 547. *Shankland's appeal*, 47 Penn. St. 113. *Rife* v. *Geyer*, 59 Penn. St. 393. *White* v. *White*, 30 Vt. 338. *Pope* v. *Elliott*, 8 B. Mon. 56. *Nichols* v. *Eaton*, 91 U. S. 716. *Hyde* v. *Woods*, 94 U. S. 523.

The precise point involved in the case at bar has not been adjudicated in this Commonwealth; but the decisions of this court which we have before cited recognize the principle, that, if the intention of the founder of a trust, like the one before us, is to give to the equitable life tenant a qualified and limited, and not an absolute, estate in the income, such life tenant cannot alienate it by anticipation, and his creditors cannot reach it at law or in equity. It seems to us that this principle extends to and covers the case at bar. The founder of this trust was the absolute owner of his property. He had the entire right to dispose of it, either by an absolute gift to his brother, or by a gift with such restrictions or limitations, not repugnant to law, as he saw fit to impose. His clear intention, as shown in his will, was not to give his brother an absolute right to the income which might hereafter accrue upon the trust fund, with the power of alienating it in advance, but only the right to receive semiannually the income of the fund, which upon its payment to him, and not before, was to become his absolute property. His intentions ought to be carried out, unless they are against public policy. There is nothing in the nature or tenure of the estate given to the *cestui que trust* which should prevent this. The power of alienating in advance is not a necessary attribute or incident of such an estate or interest, so that the restraint of such alienation would introduce repugnant or inconsistent elements.

We are not able to see that it would violate any principles of sound public policy to permit a testator to give to the object of his bounty such a qualified interest in the income of a trust fund, and thus provide against the improvidence or misfortune of the beneficiary. The only ground upon which it can be held to be against public policy is, that it defrauds the creditors of the beneficiary.

It is argued that investing a man with apparent wealth tends to mislead creditors, and to induce them to give him credit. The answer is, that creditors have no right to rely upon property thus held, and to give him credit upon the basis of an estate which, by the instrument creating it, is declared to be inalienable by him, and not liable for his debts. By the exercise of proper diligence they can ascertain the nature and extent of his estate, especially in this Commonwealth, where all wills and most deeds

are spread upon the public records. There is the same danger of their being misled by false appearances, and induced to give credit to the equitable life tenant when the will or deed of trust provides for a cesser or limitation over, in case of an attempted alienation, or of bankruptcy or attachment, and the argument would lead to the conclusion that the English rule is equally in violation of public policy. We do not see why the founder of a trust may not directly provide that his property shall go to his beneficiary with the restriction that it shall not be alienable by anticipation, and that his creditors shall not have the right to attach it in advance, instead of indirectly reaching the same result by a provision for a cesser or a limitation over, or by giving his trustees a discretion as to paying it. He has the entire *jus disponendi*, which imports that he may give it absolutely, or may impose any restrictions or fetters not repugnant to the nature of the estate which he gives. Under our system, creditors may reach all the property of the debtor not exempted by law, but they cannot enlarge the gift of the founder of a trust, and take more than he has given.

The rule of public policy which subjects a debtor's property to the payment of his debts, does not subject the property of a donor to the debts of his beneficiary, and does not give the creditor a right to complain that, in the exercise of his absolute right of disposition, the donor has not seen fit to give the property to the creditor, but has left it out of his reach.

Whether a man can settle his own property in trust for his own benefit, so as to exempt the income from alienation by him or attachment in advance by his creditors, is a different question, which we are not called upon to consider in this case. But we are of opinion that any other person, having the entire right to dispose of his property, may settle it in trust in favor of a beneficiary, and may provide that it shall not be alienated by him by anticipation, and shall not be subject to be seized by his creditors in advance of its payment to him.

It follows that, under the provisions of the will which we are considering, the income of the trust fund created for the benefit of the defendant Adams cannot be reached by attachment, either at law or in equity, before it is paid to him.

*Bill dismissed.*

The case was argued at the bar in November 1881, and re-argued in March 1882, by *J. R. Churchill*, for the plaintiff; by *R. D. Smith & W. W. Vaughan*, for the defendant Adams; and by *E. F. Hodges*, for the trustee.