SOUTHWARD POTTER & others, executors, *vs.* CONVERSE MERRILL & others.

Bristol. Oct. 27, 1886. — Jan. 5, 1887.   DEVENS & W. ALLEN, JJ., absent.

A testator, who in his lifetime had made advancements to five of his six children, differing much in amounts, made a will, by which he gave his property to his children absolutely, expressing a wish to do equally by all his children. Sixteen days after the execution of the will, he executed a codicil, containing the following provision: " All sums of money given to my children in my said will, and all sums paid to them by my executors under said will, are given to them and are paid to them for the benefit of their heirs respectively, and are not to be in any way or manner liable for their debts, or taken by their respective creditors, if any, in any way or form." *Held,* that the codicil did not cut down the gifts to the testator's children contained in the will.

BILL IN EQUITY, by the executors of the will of Edward Merrill, to obtain the instructions of the court as to the construction of a codicil to the will. The case was heard by *Holmes*, J., and reserved for the consideration of the full court. The facts appear in the opinion.

*T. M. Stetson*, for the testator's children.

*C. W. Clifford,* (*H. H. Crapo* with him,) for the testator's grandchildren.

C. ALLEN, J. The testator left six children. To five of them he had made advancements in his lifetime, differing much in amounts. To one, he had made no advancement. The will contains a clear expression of the testator's wish to do equally by all his children; but it contains no suggestion, direct or remote, of grandchildren, or of his children's heirs, or of attaching any trust to the bequests to his children. Sixteen days after the execution of the will, the codicil was executed, which contains the provision out of which the question now arises. This provision is, " All sums of money given to my children in my said will, and all sums paid to them by my executors under said will, are given to them and are paid to them for the benefit of their heirs respectively, and are not to be in any way or manner liable for their debts, or taken by their respective creditors, if any, in any way or form."

Taking these words literally, all the sums of money are given to the testator's children, for the benefit of their heirs respectively; and principal as well as income is included. But it is plain that the testator did not, by this brief clause, mean to make so great a change in the destination of his property as to cut off all beneficial interest in his children, and to say that, whereas by the will everything was given to them absolutely, now by the codicil all this should be changed, and nothing given to them beneficially, but everything left in trust for their heirs. Indeed, this view is not contended for in the argument. The counsel for the grandchildren frankly concedes that this would be too strong a construction to ask for; and he contends that the true meaning is, that the income should go to the testator's children for their lives, and the principal be held for their heirs. He concedes, also, that this result can only be reached by establishing a trust, since, if the property is vested absolutely in the children, the further expressions that the same should not be liable for debts, or taken by creditors, must in law be held to be simply nugatory. *Broadway Bank* v. *Adams*, 133 Mass. 170.

There is no clear expression of an intention to create a trust. The word " trust " is not used. This, however, would not be decisive, if a clear intention to create a trust could be found. But the will contains none of the provisions which usually accompany the creation of a trust. No suggestion is made of

paying the income to the testator's children for life, and keeping the principal for their heirs. There is no specification of persons to take the remainder, except the very general one of " heirs." It is at present uncertain who may prove to be the children's heirs; it may be their issue, or, in the case of the sons, their wives, or their brothers and sister. It is more probable that he meant that the heirs should take only by descent, and not as independent legatees. The testator's purpose seems to have been to prevent the property from going to his children's creditors, but not to benefit the children's heirs, to the exclusion of the children themselves. This purpose, as expressed in the codicil, falls short of creating a trust. There is nothing to show that the testator would wish to go so far as would be necessary in order to carry out his purpose of securing the property against creditors. He did not mean to cut off his children. Reading the will and the codicil together, the latter does not appear to be a revocation of the will, but rather an expression of his purposes and hopes in making it. The statement which it contains is a general and sweeping one, applicable to all his children alike, and to all sums of money given to them in the will. There is no selection of any particular child, whose share for special reasons he might wish to put in trust; but all his children come within the provision, including the son to whom no advancement had been made, and who was appointed one of the executors, with a request that he be not required to give bond. It is hardly to be imagined that the testator, so soon after the execution of his will, would mean, by so short and vague a provision in a codicil, to make so radical a change in the disposition of his property, and put his whole estate in trust for the benefit of his children's heirs. Moreover, this would fail to make the contemplated equalization of his gifts to his children. To tie up the shares under the will in trusts, when the advancements to five of his children of widely differing sums had been free from any trust, would not put them all on an equality. Besides, this would also effect a revocation of the bequest in the will of $100 to his son Charles, which, if intended, would more naturally have been mentioned expressly. It is also to be observed, that the construction contended for would by no means have the effect entirely to cut off the children's creditors, but would leave the income of the

property still open to be reached, and so this would not fulfil the purpose of the testator.

On the whole, without going into further details, it seems to us that the testator did not mean to deprive his children of the ownership of the property given to them by the will, but rather to annex to such ownership a condition or limitation; to which, however, no legal effect can be given.    *Decree accordingly.*