## S. G. WILDER *vs.* W. G. ROLAND *et al.*

### IN EQUITY.  BEFORE MCCULLY, J.

### JANUARY, 1887.

A trust deed expressed that the property conveyed was for a wife's separate use and was not to be mortgaged or alienated. Husband and wife mortgaged the property to secure a debt for lumber to repair the family dwelling:

Held, the mortgage was invalid: and the plaintiff's claim stands on its common law footing and cannot be enforced in equity.

### DECISION OF MCCULLY, J.

The bill alleges that on November 13, 1876, the defendants executed, acknowledged and delivered to the plaintiff a mortgage on certain premises to secure the payment of $387.99 which, with interest, is in default and due; that concurrently with the mortgage the defendants made and delivered a promissory note, which the plaintiff has lost; that consideration of the note and mortgage was a bill of lumber purchased of the

plaintiff by defendant W. G. Roland, and alleges that this lumber was used to build a residence upon the premises in question, in which the defendants have dwelt since and till now; that the defendants have recently made leases of portions of these premises, of which rents are about to become due.

The prayer is for foreclosure of the mortgage, and, pending proceedings, an injunction from collecting the rent.

The answer admits the execution of the mortgage and the non-payment of the sum intended to be secured by it, but alleges that large sums have been paid on account of the original account between the parties, and claims that as far as they are individually concerned, the amount secured by the mortgage has been barred by the Statute of Limitations. That the indebtedness was the individual debt of W. G. Roland for which the separate estate of Helen Roland is not liable; and further says that the land referred to in the mortgage was conveyed in 1865 by Frank Metcalf and Julia Prosser to William G. Roland, defendant, upon express trust to hold for the benefit of the said Helen Roland for her sole, separate and only use and benefit free from the debts, engagements and liabilities of her then or any future husband, and that she was therein restrained from the power of alienation and anticipation of the income from said premises.

Helen Roland says that she does not remember to have signed a promissory note concurrently with the mortgage; and W. G. Roland neither admits nor denies having signed a note, and says he does not remember giving a note.

The defendants admit that the foundation of the debt was the sale of lumber to W. G. Roland, and allege that it was for his individual debt. They deny that the lumber was used to build a house, but say it was used to repair and enlarge a house then on the premises and occupied by them.

The respondent, W. G. Roland, further says that the existence of said trust and the restraints upon alienation and anticipation was known to the complainant, but he urged him to raise money by a mortgage, and procured this instrument to be drawn which

he might assign and raise money on, and that so the respondents executed it in consequence of repeated solicitations, and merely for complainant's accommodation.

The instrument, which is the foundation of this suit, is a conveyance from Frank Metcalf and Julia Prosser in consideration of love and affection to their sister Helen Roland, and of one dollar to each of the grantors paid by William G. Roland, to him, his heirs and assigns, to hold in trust to the use of Helen. Roland for her life, for her sole, exclusive, separate and only use and benefit, free from the debts, engagements and liabilities of her present or any future husband; and, after her decease, in trust for all the children of this marriage, their heirs, etc., or failing issue surviving, then absolutely to the trustee, he surviving,

"And it is hereby declared and agreed that the said Helen Roland shall not have power to sell, mortgage, or in any way charge or incumber the premises, nor shall she have any power to anticipate the growing rents."

Should the trustee die, refuse to act, or depart from the Kingdom and remain absent for a year, the grantors, or either of them, may appoint another trustee in his place. This deed and agreement the four parties sign and acknowledge.

## BY THE COURT.

The question to be considered is whether the Court will sustain a restraint on alienation and anticipation of the life estate of a married woman vested in her trustee. Such restraint is imposed in the clearest terms in the deed before us. It has to be conceded by counsel for the petitioner that the authorities all support the proposition. See *Cahill vs. Cahill*, L. R., 8 App. Cas., 420; *Pike vs. Fitzgibbon*, L. R., 17 Ch. Div., 454; *Stanley vs. Stanley*, L. R., 7 Ch. Div., 589; *Bramon vs. Stiles*, 2 Pick., 460; *Broadway Bank vs. Adams*, 133 Mass., 170. The latter case holds this in case of a devise to brother. See also Perry on Trusts 2, § 671, with citations.

Is there a paramount equity in this case?

The lumber, which was the foundation of the debt, was used

by the husband (trustee) to enlarge and repair the family dwelling, and this the counsel for plaintiff contended creates an equity supporting the validity of the mortgage.

Not so in my opinion. The debt was the debt of the husband. He was bound to provide shelter for the wife. By the same view the provisions of the trust could be set aside for any debt contracted by the husband for the support of the family. Such a trust would, then, be of no validity.

The fact that the wife may have signed the note, though this is not proved, will not assist the claim on the property.

The restraint on alienation is equally binding on her. There is no reason in public policy why this restraint should not be sustained.

The creditor of Roland had this deed of trust on the record for inspection, and had the deed itself in his hands, with the averment of Roland that he held no estate on which he or his wife could give valid security. It cannot be said that credit was given on the faith of this property.

If I dismiss the bill so far as the mortgage is concerned, is there any reason why the Court in Equity should take further cognizance of the case? I think not.

Equity having taken jurisdiction, will proceed further to adjudicate other matters not of themselves and alone within equity jurisdiction; but I do not consider that a footing in equity is gained by a claim upon an invalid mortgage, so that a Court should, this being so declared, then proceed to enjoin rents and profits, appoint a receiver, or order application of rents to payments on account.

The plaintiff's claim stands, without the security of mortgage, on its common law footing.

The temporary injunction is hereby dissolved, and the bill dismissed.

*Ashford & Ashford,* for petitioner.

*F. M. Hatch,* for defendant.

Honolulu, January 28, 1887.