CHARLES O. BILLINGS *vs.* JULIA M. MARSH & another.

Suffolk. January 27, 28, 1891. — February 26, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, & MORTON, JJ.

*Insolvent Debtor — Property covered by Assignment — Equitable Life Estate.*

The interest of an insolvent debtor in property held for him in trust under a will which provides that no part of the property "shall, before the payment or conveyance or transfer thereof" to him, "be assignable or attachable or trusteeable, or in any way or manner liable for or liable to be taken for any debt, liability, or contract" of his, "or be applied in any way or manner to the payment thereof," will not pass to his assignee in insolvency, under the Pub. Sts. c. 157, §§ 44, 46, which define the "property" and "estate" of a debtor which will pass to his assignee.

HOLMES, J. This is a bill in equity by an assignee in insolvency, seeking to recover property alleged to have passed to him by the assignment. The defendants are trustees under the will of Charles Marsh, who hold the property in question under that will in trust for the insolvent, who is Mr. Marsh's daughter, during her life. There are several distinct funds, but they are all equitable life estates, and are all held subject to the four-

teenth article of the will, which provides that no part of the property "shall, before the payment or conveyance or transfer thereof to such child, . . . be assignable or attachable or trusteeable, or in any way or manner liable for or liable to be taken for any debt, liability, or contract of such child, . . . or be applied in any way or manner to the payment thereof." The question is whether this provision prevented the property from passing to the plaintiff.

The plaintiff's counsel admit that, if the insolvent had attempted to alienate her interest, or if a single creditor had attempted to reach it in payment of his debt, the attempt would have failed, under *Broadway National Bank* v. *Adams*, 133 Mass. 170. But they say, very truly, that when a testator or a grantor attempts to attach to property an incident which the law does not allow to be attached to it, that attempt also must fail, no matter how clearly he may express his intention ; and they argue that, whatever may be the policy of the law in the absence of statute, the insolvent law transfers all the insolvent's property to the assignee, that this is property of the insolvent, and therefore that it passes whether the testator purported to allow or forbid the transfer.

We cannot construe the insolvent law so broadly as is necessary for the plaintiff's argument. It is true, that, by the Pub. Sts. c. 157, § 44, the judge shall "convey to the assignee all the estate real and personal of the debtor, except such as is by law exempt from attachment," but § 46 goes on to specify what the assignment shall vest in the assignee. The plaintiff says that § 46 does not limit, but extends § 44. We think the contrary apparent on the face of the statutes as they now read. The form of the assignment is directed by § 44, its effect is detailed in § 46. But if there were any doubt on the question, it is answered by going back to the original act. In the St. of 1838, c. 163, the sections 44 and 46 will be found substantially as they now are, but in a single section (§ 5), what is now § 46 following § 44, and introduced by the words, "which assignment shall vest," etc. In this form, there can be no question that the words of § 46 alone determined what the assignment should vest in the assignee. The compilers of the General Statutes, without remark, and merely as a matter of arrangement, separated the

two parts, and put another section between them. Gen. Sts. c. 118, §§ 42, 44.

It is not contended that § 46 taken by itself would include the property in question. This is not property which the debtor " could have lawfully sold, assigned, or conveyed, or which might have been taken on execution upon a judgment against him," or a debt due to the debtor, or a right of action for goods or estate, real or personal.

However liberally § 46 may have been construed, it is to be remembered that it does not cover all valuable rights of the insolvent, — for instance, a right of action for personal injury, (*Stone* v. *Boston & Maine Railroad*, 7 Gray, 539, and see § 51,) although it is going pretty far to say that such a right is not property. See *Bassett* v. *Parsons*, 140 Mass. 169, 170; *Frazer* v. *Bigelow Carpet Co.* 141 Mass. 126, 128. It is to be observed, also, that the statute touching bills in equity to reach and apply " any property " of a debtor which could not be taken on execution afforded about as strong an argument for the plaintiff in *Broadway National Bank* v. *Adams*, as the insolvent law does in this case. Pub. Sts. c. 151, § 2, cl. 11. The argument has been strengthened by the St. of 1884, c. 285, § 1, but no one has ventured to suggest that *Broadway National Bank* v. *Adams* is not still the law, and it has been and undoubtedly will be followed in cases since the later act. *Baker* v. *Brown*, 146 Mass. 369. *Maynard* v. *Cleaves*, 149 Mass. 307, 309. *Slattery* v. *Wason*, 151 Mass. 266. See further *Nichols* v. *Eaton*, 91 U. S. 716; *Durant* v. *Massachusetts Hospital Ins. Co.* 2 Lowell, 575.

*Bill dismissed.*

*L. L. Scaife & B. G. Davis*, for the plaintiff.

*J. D. Ball*, for the defendants.