BOSTON SAFE DEPOSIT & TRUST COMPANY *vs.* FORREST F. COLLIER, trustee in bankruptcy, & another.

Suffolk.    November 16, 1915. — January 7, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Restraint upon Alienation.   Trust,* Validity, Spendthrift.

In·this Commonwealth a provision in a will, that "every payment of income or principal hereinbefore directed or devised to be made, shall be made personally to the persons to whom they are devised or upon their order or receipt in writing, in either case free from the interference or control of the creditors of such persons and never by way of anticipation or assignment," is not invalid as an improper restraint upon alienation.

Where, therefore, by the terms of a trust under a will containing such a provision it also is provided that, after the death of the testator's son and when the youngest of such son's children reaches or would have reached, if living, the age of forty years, one half of the trust estate is to be divided among such children and the issue of a deceased child, and those events have happened, a distributive share should be paid to a son of the testator's son, although he had been adjudged a bankrupt before the time for distribution had arrived and a trustee in bankruptcy of his estate sought that the share should be paid to him.

Review by BRALEY, J., of cases following *Broadway National Bank* v. *Adams,* 133 Mass. 170.

BILL IN· EQUITY, filed in the Probate Court on November 25, 1914, by the trustee under the will of Maturin M. Ballou, late of Boston, for instructions as to whether, under the ninth clause of the will, set out in the opinion, a distributive share of Franklin B. Ballou should be paid to him or to his trustee in bankruptcy, the defendant Forrest F. Collier.

In the Probate Court, where the suit was heard upon the pleadings and an agreed statement of facts, *Grant,* J., ordered a decree directing that the share be paid to Franklin B. Ballou.  On appeal from that decree the case was reserved for this court by *Braley,*

J., upon the pleadings and the agreed statement of facts.  The material facts are stated in the opinion.

*F. F. Collier*, trustee in bankruptcy, *pro se*.

*H. A. Wagner*, for the defendant Ballou.

BRALEY, J.  The testator, in the ninth clause of his will, provided, "It is my will that every payment of income or principal hereinbefore directed or devised to be made, shall be made personally to the persons to whom they are devised or upon their order or receipt in writing, in either case free from the interference or control of the creditors of such persons and never by way of anticipation or assignment."

By other clauses he left the residue of his estate in trust to pay to his widow and to his son Murray R. Ballou, in equal shares, the net income for life and upon the death of his son the income coming to him is to be divided equally among his surviving children or the issue then living of deceased children until the first child reached or would have reached, if living, the age of forty, but in any event not before twenty-one years after the son's death, when the principal is to be distributed in equal shares among the then surviving children and the issue then living of any deceased child.

The widow is still living, but Murray R. Ballou has died, leaving three children and the issue of a deceased child surviving, among whom full distribution has been made except as to Franklin B. Ballou, a son, who at the date of filing the petition was more than forty years of age.

But, as he had been adjudged a bankrupt before distribution, the defendant Collier, his trustee in bankruptcy, contends, that, although a discharge in bankruptcy had been granted he is entitled to the share coming to the bankrupt because a testator cannot nullify a bequest of an absolute legal interest in personal property by a provision that the legatee's interest shall not be alienated, nor taken for his debts.

It is urged that the restriction is repugnant to the gift or bequest, and the English rule undoubtedly is, "that, if the property was given to the sons, it must remain subject to the incidents of property, and it could not be preserved from the creditors, unless given to some one else."  *Brandon* v. *Robinson*, 18 Ves. 429, 434.

But in *Lathrop* v. *Merrill*, 207 Mass. 6, 9, from which this proposition is taken, it is also said: "On the other hand it must be taken now to be settled in this Commonwealth that in case of the devise of an equitable fee in land or the bequest of an equitable interest in personal property the rule which originated in *Broadway National Bank* v. *Adams*, 133 Mass. 170, obtains, and limitations against alienation and forbidding the property to be taken for the debts of the devisee or legatee are valid. *Claflin* v. *Claflin*, 149 Mass. 19. *Young* v. *Snow,* 167 Mass. 287. *Danahy* v. *Noonan*, 176 Mass. 467. *Hoffman* v. *New England Trust Co.* 187 Mass. 205. *Dunn* v. *Dobson*, 198 Mass. 142."

It is nevertheless now pressed in argument that this court never has gone so far as to say that an equitable fee can be placed beyond the reach of creditors. The reasoning in *Broadway National Bank* v. *Adams*, 133 Mass. 170, 173, 174, is not thus limited.

Said Chief Justice Morton speaking for the court: "We do not see why the founder of a trust may not directly provide that his property shall go to his beneficiary with the restriction that it shall not be alienable by anticipation, and that his creditors shall not have the right to attach it in advance, instead of indirectly reaching the same result by a provision for a cesser or a limitation over, or by giving his trustees a discretion as to paying it. He has the entire *jus disponendi*, which imports that he may give it absolutely, or may impose any restrictions or fetters not repugnant to the nature of the estate which he gives. Under our system, creditors may reach all the property of the debtor not exempted by law, but they cannot enlarge the gift of the founder of a trust, and take more than he has given.

"It is argued that investing a man with apparent wealth tends to mislead creditors, and to induce them to give him credit. The answer is, that creditors have no right to rely upon property thus held, and to give him credit upon the basis of an estate which, by the instrument creating it, is declared to be inalienable by him, and not liable for his debts. By the exercise of proper diligence they can ascertain the nature and extent of his estate, especially in this Commonwealth, where all wills and most deeds are spread upon the public records. There is the same danger of their being misled by false appearances, and induced to give credit to the equitable life tenant when the will or deed of trust provides for a

cesser or limitation over, in case of an attempted alienation, or of bankruptcy or attachment."

The trust in question is not within the rule against perpetuities or open to the objection of the accumulation of property by corporations or ecclesiastical bodies of which the common law was exceedingly jealous.  And whether income or principal is placed beyond the power of alienation or of attachment, the result to creditors of the beneficiary is merely a question of degree.

The owner, of course, cannot settle his property in trust, putting his right to the income which is reserved to himself for life beyond the reach of creditors.  If, however, the founder is not the debtor, the property held in trust is not the debtor's except in so far as the founder has provided.  *Pacific National Bank* v. *Windram,* 133 Mass. 175, 176.

We are manifestly dealing with a rule of property which there is every reason to believe has been accepted and acted upon by the bar, settlors and testators for thirty-three years, since the leading case stating the law governing the creation of equitable estates was decided.  It therefore becomes necessary to review our own cases subsequent to *Broadway National Bank* v. *Adams* in order to determine whether there has been any departure from the doctrine enunciated in that case, which has been referred to and followed in *Pacific National Bank* v. *Windram,* 133 Mass. 175, *Foster* v. *Foster,* 133 Mass. 179, *Forbes* v. *Lothrop,* 137 Mass. 523, *Potter* v. *Merrill,* 143 Mass. 189, *Baker* v. *Brown,* 146 Mass. 369, *Sears* v. *Choate,* 146 Mass. 395, *Claflin* v. *Claflin,* 149 Mass. 19, *Maynard* v. *Cleaves,* 149 Mass. 307, *Slattery* v. *Wason,* 151 Mass. 266, *Billings* v. *Marsh,* 153 Mass. 311, *Wemyss* v. *White,* 159 Mass. 484, *Nickerson* v. *Van Horn,* 181 Mass. 562, *Alexander* v. *McPeck,* 189 Mass. 34, *Huntress* v. *Allen,* 195 Mass. 226, *Dunn* v. *Dobson,* 198 Mass. 142, *Berry* v. *Dunham,* 202 Mass. 133, *Lathrop* v. *Merrill,* 207 Mass. 6, *Shattuck* v. *Stickney,* 211 Mass. 327, and *Hale* v. *Bowler,* 215 Mass. 354.  We do not propose, however, to comment on all of them.

In *Claflin* v. *Claflin,* 149 Mass. 19, the bequest was one third of the residue of the personal estate to trustees in trust, "to sell and dispose of the same, and to pay . . . the proceeds thereof, . . . to my son . . . in the manner following, viz.: ten thousand dollars when he is of the age of twenty-one years, ten thousand dollars

when he is of the age of twenty-five years, and the balance when he is of the age of thirty years." The trustees paid over the first $10,000, and thereupon the son, claiming that he had the entire beneficial interest both in the income and the property itself, brought a bill in equity to obtain the residue. It was held that the testator had a right to impose restrictions, and there was no reason why his intention should be thwarted, and that the provisions of the will should be carried out.

The gift comprised not only income, but principal; and it is significant that when referring to *Broadway National Bank* v. *Adams*, the court say, "The rule contended for by the plaintiff in that case was founded upon the same considerations as that contended for by the plaintiff in this."

In *Huntress* v. *Allen*, 195 Mass. 226, the testator created a trust for the benefit of his children giving absolute discretion to the trustees as to payment of income until the youngest child should reach twenty-five, the property then to be divided among those surviving and the issue of any deceased child, with a provision that the share of any child in the body or income of the fund should not be liable to or for his or her debts or subject to trustee process.

It is stated in the opinion that the exemption of the shares of the children from interference by creditors was valid and enforceable.

In *Dunn* v. *Dobson*, 198 Mass. 142, after reference to the rule of the common law, it was said that *Broadway National Bank* v. *Adams* and *Claflin* v. *Claflin* decided "that in creating an equitable estate a donor may carve out and create such equitable rights in property as his fancy may dictate and his imagination devise, without regard to the rights appertaining to the several estates known to the law. This conclusion was stated to rest on the doctrine that in such a case the donor 'does not give them an absolute estate and then impose restrictions and conditions repugnant to the estate, but gives an ownership qualified by the directions' adopted by the donor; see Barker, J., in *Young* v. *Snow*, 167 Mass. 287, 288, 289. . . . This must be taken to be a settled rule of property not now to be questioned."

We have already referred sufficiently to *Lathrop* v. *Merrill*, 207 Mass. 6, which reiterates the same doctrine, and expressly affirms *Dunn* v. *Dobson*.

The testator in *Shattuck* v. *Stickney*, 211 Mass. 327, devised and bequeathed one seventh of the residue of his estate "to my said executors as trustees for my nephew. . . . And I authorize and direct my said executors as such trustees to invest the said share, both the principal and the income thereof as it shall accrue, with full authority to them to sell and to reinvest the said principal and income as often as they may deem it expedient for the interest of the trust. Whenever, and not before, they shall in their discretion be satisfied that it is safe and proper to do so, they may pay to the said [nephew] any part or the whole of the accumulation of said trust. If any balance of such trust fund shall be remaining in the hands of my executors as such trustees upon the death of the said [nephew] then, in that event, the same shall be paid by them as follows: . . ."

The opinion holds that "accumulation" meant the fund accumulated, and included both the original principal and the increase from arrears of income, and that the trustees were empowered in their discretion to pay a part or the whole to the nephew. "The reasons which induced the testator to place the share of this nephew beyond the control of himself and of possible creditors do not appear. It may be significant that the case of *Broadway National Bank* v. *Adams*, 133 Mass. 170, had been recently published at the date of the will. But it is quite evident that the testator intended to treat alike all his heirs, including this unmarried nephew, and that the restraint upon the nephew's power to control his one seventh portion was placed there solely for his benefit. It is also apparent that the testator regarded as this nephew's share the original fund and any income that the trustees might deem it best to withhold from him and to reinvest. Throughout Item X the testator treats this share, including the original principal as well as the accumulated income, as a single fund, not only for the purposes of investment but also for those of distribution."

It would seem beyond question from this examination, that if words are given their ordinary meaning, a trust of the nature under discussion has been repeatedly recognized and conformed to until the legal principle involved has become a safe and well established rule affecting the practical administration of justice.

If, as the defendant Collier argues, a change is advisable, taking

away or limiting this testamentary power, it should come through legislative action and not by overruling or substantially modifying our former decisions. *New England Trust Co.* v. *Eaton,* 140 Mass. 532, 545. *Goodtitle* v. *Kibbe,* 9 How. 471, 478.

We have not deemed it requisite to discuss cases from other jurisdictions. The validity of such trusts is recognized by the great weight of American authority. *Mason* v. *Rhode Island Hospital Trust Co.* 78 Conn. 81. *Olsen* v. *Youngerman,* 136 Iowa, 404. *Wagner* v. *Wagner,* 244 Ill. 101. *Roberts* v. *Stevens,* 84 Maine, 325. *Maryland Grange Agency* v. *Lee,* 72 Md. 161. *Lampert* v. *Haydel,* 96 Mo. 439. *Hardenburgh* v. *Blair,* 3 Stew. 645. *Mattison* v. *Mattison,* 53 Ore. 254. *Siegwarth's estate,* 226 Penn. St. 591. *Jourolmon* v. *Massengill,* 86 Tenn. 81. *Nichols* v. *Eaton,* 91 U. S. 716. *Shelton* v. *King,* 229 U. S. 90. 39 Cyc. 240, 241, 242, and cases cited in the notes. 3 Ann. Cas. 588. 18 Ann. Cas. 221. Perry on Trusts, § 386 a.

The decree of the Probate Court, that the bankrupt is entitled to his share of the estate of his grandfather in the possession of the petitioner, should be affirmed.

*Ordered accordingly.*