# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

(No. 12124.—Reversed and remanded.)

EDWARD HOPKINSON et al. Appellees, vs. LOUISA SWAIM
et al.—(H. C. EWALT, Appellant.)

*Opinion filed June 20, 1918.*

1. WILLS—*when power to devisee of equitable estate for life is
limited to creating spendthrift trust.* Where a testator devises to
his son an equitable estate for life, putting the title in trustees, with
a legal estate in remainder to the children of said devisee, and
provides that the son may by will appoint trustees to manage the
share of any of said children with such limitations as he may deem
best to secure the property to such child, the power given is merely
to create a spendthrift trust as to the share of any child, but not
to dispose of any share, after the death of a child, to the issue or
survivors of the deceased, or in any other way.

2. SAME—*execution in excess of a power, if severable, is void
only as to the excess.* Where there has been a full execution of
a power and something has been added which is not authorized, if
the boundaries between the excess and the rightful execution are
distinguishable and severable the execution is good and the ex-
cess, only, void.

3. SAME—*a trust may be created to remove income of property
from control of beneficiary and creditors.* Trusts whereby the in-
come from property, real or personal, may be required to be paid to
a beneficiary but shall be beyond his control and beyond the reach

of his creditors while in the hands of the trustee may be created and will be sustained by the courts.

4. SAME—*a restriction upon alienation need not be in express terms.* The intention of the testator determines the construction of his will, and it is not necessary that a restriction upon alienation shall appear in express terms if the intention is clearly to be gathered from the instrument.

5. SAME—*statement of the rule against perpetuities.* The rule against perpetuities is that every interest dependent upon a condition precedent must vest within a life or lives in being at the creation of the interest and twenty-one years, and if the terms of the creation of the interest are such that a violation of the rule may possibly happen the interest fails.

6. SAME—*when trusts created under a power do not violate the rule against perpetuities.* Where a testator devises his property in trust, giving his son an equitable life estate, with the legal estate in remainder to his son's children, and creates a power in his son to appoint the share of any of said children in trust to secure its use and enjoyment by the child, the validity of the trusts created by the son in his will in execution of the power, as to whether they violate the rule against perpetuities, must be determined on the basis of the facts existing at the time of the creation of the power by the will of the ancestor, regardless of whether an excess execution of the power by the son's will violates said rule.

7. SAME—*possibility of void appointment under power will not render power void as against rule against perpetuities.* The mere possibility that a void appointment may be made under a power when the power may be completely executed in favor of all its objects without violating the rule against perpetuities will not invalidate an appointment which satisfies the rule.

8. SAME—*restraint upon alienation is allowed by creation of a spendthrift trust.* A testator may devise a remainder in fee to his grand-daughters and at the same time provide for the creation of a trust by his son, to whom he had given the equitable life estate, to secure the enjoyment of said remainder to the daughters, as the creation of a spendthrift trust is an exception to the rule against restraining a devisee in fee simple from selling his land.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

LYMAN McCARL, and BARBER & BARBER, for appellant.

CONKLING & IRWIN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Edward Hopkinson, individually and as trustee under the will of Eliza Hopkinson, and Edward Hopkinson and the Fidelity Trust Company of Philadelphia, substituted trustees by appointment of the court, under the will of William Swaim, Jr., filed a bill in the circuit court of Sangamon county praying for the partition of 1000 acres of land situated in Sangamon, Macon and Christian counties and for a construction of the wills of James Swaim and William Swaim, Jr. The land formerly belonged to William Swaim, who devised it by his will, which was admitted to probate in the orphans' court of the city and county of Philadelphia, Pennsylvania, on July 29, 1846, to his son, James Swaim, and his daughter, Eliza Swaim, in fee simple, in equal parts. Eliza Swaim died in 1911 leaving a will, and no controversy arises in regard to the interest of her devisees in the undivided one-half of the land. James Swaim was a resident of Philadelphia and died on March 13, 1870, leaving a widow and William Swaim, Jr., his son and only heir. His will was admitted to probate and devised his half interest in the land in question in trust, subject to the payment of an annuity to his wife, to pay the income to his son, William Swaim, during his life, "then, immediately upon his decease, in trust for the children of the said William Swaim, and the issue of such as may be then deceased, in such parts, shares and proportions and for such estates as they would be entitled to if the said William Swaim had died intestate without leaving any widow, seized and possessed absolutely thereof; provided, however, that it shall and may be lawful for the said William Swaim, if he thinks proper so to do, by any instrument in writing in the nature of a last will and testament under his hand and seal, to appoint the said share or part or proportion of any of his said children, or of the child or children of any deceased child, to any trustee or trustees, in trust for

the sole and separate use of said child or issue of said deceased child, and under such limitations and restrictions as in his discretion he may deem best, so as to secure the same to the said child or issue of deceased child, for his, her or their sole and separate use, maintenance and enjoyment." The widow of James Swaim died on March 21, 1875, and William Swaim, Jr., died testate on April 7, 1877, leaving a widow and three daughters, all born in James Swaim's lifetime, who subsequently married,—Catharine Marguerite Davenhill, Amelia Ellery and Eliza Battanchon. His will was admitted to probate in Philadelphia, and provided in regard to the lands in controversy, after making provision for an annuity to his wife in accordance with the terms of his father's will, as follows:

"I do hereby, in pursuance of the power and authority in me vested by the said last will and testament of my father, James Swaim, deceased, hereby direct, limit and appoint, subject to the direction and appointment hereinbefore made in favor of my widow, the following new trusts touching the said lands, tenements, hereditaments and property so devised in trust for my use and that of my descendants by the last will and testament aforesaid; that is to say, I direct, limit and appoint the share, part or proportion of each of my children, and the share, part or proportion of each of the children of any deceased child of mine, or in and to the said lands, tenements, hereditaments and property, unto the Hon. Edward King and William S. Price, Esq., of the city of Philadelphia, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, from and after my decease to have, hold and possess the said lands, tenements, hereditaments and property upon and for the trusts, interests and purposes, and with and under and subject to the powers, provisions and declaration hereinafter mentioned; that is to say, upon the trust that they, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, do and shall

(after discharging the necessary expenses incident to the execution of the trusts and paying and satisfying the aforesaid annuity to my widow) divide and pay over the net rents, issues and profits, income and dividends of the said trust estate as the same shall accrue and become due and payable, unto my said wife, Louisa Swaim, as the guardian of my three children, Catharine Marguerite, Amelia and Eliza Swaim, in equal parts and shares, for the use and benefit of my said children, until they respectively arrive at the age of twenty-one years; and as and after each of my said children respectively arrive at the age of twenty-one years, to pay her said part and share of the said rents, issues, profits, income and dividends to her directly, whether she be covert or sole, during all the period of her natural life, for her separate use and benefit, the said income to be and at all times to remain free and exempt from the power and control of any husband and from liabilities for any debts or engagements. The receipts of my children for such payments to them, whether covert or sole, shall be deemed and taken to be good and sufficient vouchers and acquittances for the said trustees, or either of them, in the settlement of their accounts, but if either or any of my said children depart this life unmarried, leaving the others, or either of them, her surviving, then and in that case upon the trust that they, the said Edward King and William S. Price, and the survivor of them, and their heirs, executors, administrators and assigns of such survivor, shall and do pay over the said rents, issues, profits, income and dividends to the survivor or survivors of my said children during the period of her or their natural life. If, however, either or any of my said children depart this life leaving the others or either of them, and also lawful issue of such deceased child, her surviving, then and in such case the said trustees shall pay over to or for such issue the part and share of said rents, issues, profits, income and dividends which his, her or their parent would have been entitled to if living, in

equal parts and shares as between or among such issue, for their sole and separate use, during the natural life of the survivor of my said three children, Catharine Marguerite, Amelia and Eliza Swaim; and from and immediately after the decease of the survivor of my said children, in trust that the said Edward King and William S. Price, and the survivor of them, and the heirs, executors and administrators and assigns of such survivor, shall and will grant and convey, and assure, assign, transfer, set over and pay the estate, real and personal, the subjects of the trusts held and possessed by them, whatsoever and wheresoever, including as well that devised in trust under the last will and testament of my father, James Swaim, deceased, as that which I have otherwise acquired or may hereafter acquire, and not hereinbefore disposed of, unto the lawful issue of my said three children, Catharine Marguerite, Amelia and Eliza Swaim, or to the lawful issue of such of my said children as have left such issue her or them surviving, and in such manner that the issue of each of my children that has died leaving issue shall receive his, her or their parents' share of the said estate, and as between such issue, in equal parts and shares, but if all my said children die without leaving issue, then in trust to grant and convey, and assure, assign, transfer, set over and pay the said estate, real and personal, unto the persons who would be entitled to the said property and estate derived by me from my father, James Swaim, deceased, under the provisions of his aforesaid will, if I had not by this instrument executed any of the powers of appointment hereinbefore recited or referred to."

Eliza Swaim Battanchon died on June 9, 1908, without issue, leaving Charles F. F. Battanchon, her surviving husband, to whom by her will, which was admitted to probate in the surrogate's court of Richmond county, New York, she devised and bequeathed all her property. Afterward, upon the adjudication of the third account of William S. Price, surviving trustee under the will of William Swaim,

Jr., the wills of James Swaim and William Swaim were interpreted by the orphans' court of Philadelphia county, and the balance of principal personalty shown by that account, being certain funds held upon the same trusts as the real estate, was awarded one-third to the administrator of the estate of Eliza Battanchon and two-thirds in further trust, the court finding that the power of appointment under the will of James Swaim was not well executed by William Swaim, Jr., so far as the execution thereof relates to the disposition of the principal after the respective deaths of the three daughters of William Swaim, Jr. Appeals were taken by the surviving trustee and the two surviving daughters to the Supreme Court of Pennsylvania but were subsequently withdrawn, and in June, 1911, an agreement was made by Charles F. F. Battanchon, in his own right and as administrator of the estate of Eliza Battanchon and as sole heir and devisee under her will, and Henry P. Brown, as administrator with the will annexed of her estate in the State of Pennsylvania, Catharine M. Davenhill, Amelia Ellery and William S. Price, the surviving trustee, reciting the filing of the trustee's account in the orphans' court, the adjudication by that court and the taking of the appeals to the Supreme Court and settling the controversy among the parties, as follows: (1) The appeals shall be withdrawn; (2) Henry P. Brown, as administrator of Mrs. Battanchon, shall receive as his share of the personal property held in trust the one-third part thereof in accordance with the adjudication of the orphans' court, but shall pay one-sixth of said one-third share to Catharine M. Davenhill, one-sixth to Amelia Ellery and two-thirds to Charles F. F. Battanchon; (3) Battanchon, as devisee under the will of Eliza Battanchon, shall receive in fee simple as his share of the real estate held in trust one-third thereof, but shall transfer and convey to Catharine M. Davenhill in fee simple one-sixth of said one-third and to Amelia Ellery in fee simple one-sixth of said one-third; (4) Battanchon, as

284 — 2

devisee under the will of Eliza Battanchon, shall grant and convey all his interest in the real estate situated in the State of Pennsylvania to William S. Price, trustee, to be held upon the same trusts for which he now holds the remaining part or share of said estate; (10) the division of the lands in Missouri and Illinois shall be made in the same proportion as is provided in respect to the real estate in Pennsylvania, and until such division shall be made the said lands shall be deemed to be held for the use of the parties herein and according to their several interests as herein agreed. The division of the personal property and of the real estate in Pennsylvania was to be made as soon as practicable, and the division of the lands in Missouri and Illinois to be made as soon thereafter as practicable.

Catharine M. Davenhill and Amelia Ellery are both living and have children, who are defendants to the bill. On October 23, 1911, Amelia Ellery granted and assigned to her daughter, Amey Costantini, a full one-third part of all the moneys and other property, real and personal, to which she was entitled under the agreement with Battanchon and others, except the part to which she was entitled under that agreement of the fund included in the action filed in the orphans' court in Philadelphia in November, 1908. William S. Price, the trustee under the will of William Swaim, Jr., died, and the Fidelity Trust Company was appointed trustee under the will. H. C. Ewalt answered the bill and filed an interplea admitting the facts alleged, and averring that after the filing of the bill Amelia Ellery and her husband conveyed to him the undivided one-sixth part in fee simple of all the real estate involved, and claiming to be the owner in fee simple of an undivided one-sixth of such real estate and entitled to one-sixth of the rents and profits accruing after the date of his deed.

A decree was entered finding that Catharine M. Davenhill is entitled to an undivided 1/36ths part of the real estate; Amelia Ellery an undivided 2/108ths part there-

of; Amey Costantini an undivided 1/108ths part thereof; Charles F. F. Battanchon an undivided one-ninth part thereof; Edward Hopkinson and the Fidelity Trust Company, trustees under the will of William Swaim, Jr., deceased, an undivided one-third part thereof in trust, to pay out of the rents and profits to Catharine M. Davenhill one-sixth part thereof directly, whether she be covert or sole, during all the period of her natural life, for her separate use and benefit, the said income to be and at all times to remain free and exempt from the power and control of any husband and from liabilities for any debts or engagements, and to Amelia Ellery one-sixth part thereof subject to the same provisions, and that, subject to said trusts and leasehold interests, the title in fee simple in said lands is now vested in Catharine M. Davenhill of an undivided one-sixth part and in Henry C. Ewalt of an undivided one-sixth part of the whole of the real estate. H. C. Ewalt, alone, has appealed from the decree.

The controversy arises over the exercise by William Swaim, Jr., in his will, of the power of appointment conferred upon him by his father's will. The will of James Swaim created an equitable estate for life in William Swaim, Jr., with a legal estate in remainder to his children in fee simple, subject to the power conferred upon William Swaim, Jr., to appoint the share of any of them to any trustee or trustees in trust. The language conferring this power is broad enough to enable William Swaim, Jr., to create a spendthrift trust, for it authorized him to create a trust not only for the sole and separate use of any child, but, under such restrictions and limitations as in his discretion he might deem best so as to secure the property to such child or the issue of a deceased child, for his, her or their sole and separate use, maintenance and enjoyment. Therefore, if he deemed a spendthrift trust the best provision to secure the enjoyment of the property to any child he was authorized to create such a trust. Whether any

trust was to be created was left entirely to his discretion. If he failed to exercise the power given him, his children upon his death would take the property in fee simple. If he chose to exercise the power the limitations of the trust were left absolutely to his discretion, so far, of course, as not prohibited by law. He could not, however, deprive his children of any part of the property or give it to any other person or reduce their interest to a life estate, or give it, after the death of any child, to her issue or to the survivors, or in any other way. The Supreme Court of Pennsylvania so decided in the case of *Ewalt* v. *Davenhill,* 257 Pa. St. 385, where it was held that the will of William Swaim, Jr., created spendthrift trusts valid during the lives of his daughters but invalid so far as it attempted to continue the trusts beyond their lives, both as transgressing the rule against perpetuities and as being in excess of the power vested in William Swaim, Jr., by the will of James Swaim. William Swaim, Jr., had no interest in the lands in question which he could devise. His daughters took nothing under his will. He had a life estate only, with no control over the remainder, which his children took directly from his father under the latter's will, except the power to declare a trust in the share of any child under such limitations and restrictions as in his discretion he should deem best to secure the same to the sole and separate use, maintenance and enjoyment of such child. This power did not extend beyond the life of the child. Each of his daughters took under James Swaim's will a remainder in fee, which was subject only to his power to declare that it should be held in trust for her during her life. The power to appoint the shares of his children to trustees was completely executed by William Swaim, Jr., when he directed that the trustees named in his will should hold the lands in question in trust, to pay the rents and profits to the guardian of his children until they should arrive at the age of twenty-one years, and after that time to pay to each, directly, her

share of the income during her life for her separate use and
benefit, free from the control of her husband and from lia-
bility for any debts or engagements. The subsequent pro-
visions by which he undertook to dispose of the property
after the death of any of his children went entirely be-
yond the power and are void. Where there has been a full
execution of a power and something has been added which
is not authorized, and where the boundaries between the
excess and the rightful execution are distinguishable and
severable, the execution is good and the excess, only, void.
(2 Sugden on Powers, *75; 2 Washburn on Real Property,
sec. 1720; *Lawrence's Estate*, 136 Pa. 354.) The distinc-
tion between the provisions of William Swaim's will which
were within the limits of the power and those which were
not is perfectly clear. They are not dependent upon one
another or inseparably connected as a single act. While the
terms authorized and those unauthorized are contained in
the same document they are entirely distinct. The power
was completely executed, and the independent, unauthorized
limitations in no way affected or modified the execution.
The testator was not disposing of his own property but
was exercising a delegated authority over the property of
another. So far as he acted within that authority his act
was valid and must be given effect; beyond that authority
it is of no effect.

It is argued that William Swaim, Jr., attempted to
devise the whole estate to trustees to carry out a single,
complete and connected scheme, and that since the disposal
of the body of the estate,—an essential element of the
scheme,—is void the whole trust and all of its provisions
must fail. William Swaim had no estate in these lands to
devise and he did not attempt to devise any. He knew
that he was merely executing a power in his father's will,
for his own will recites and refers to it. He no doubt
mistook the extent of his power, for after fully executing
it he attempted to impose other conditions and limitations

which were unauthorized. This excess, however, does not have the effect to invalidate his execution of the power. Whether the estates which he attempted to create would have been in violation of the rule against perpetuities or not is of no importance, for his power was valid and did not transgress the rule against perpetuities, and the portion of his will which attempts to create such estates being unauthorized and clearly separable from the valid execution of the power must be rejected as surplusage and void. His intention was to secure the income of the property to his three daughters and to their children during the life of his daughters and the last survivor of them. His power only went to the extent of securing the income of each daughter during her own life. It is hardly to be imagined that he would have failed to execute the power as conferred upon him if he had known that he could only affect the estate of each daughter during her own life and not after her death during the lives of her sisters.

It is argued that even if the trusts created by William Swaim's will are separable, the trusts for the lives of the daughters, respectively, are void as illegal restraints upon the enjoyment of the estate beyond the period permitted by the rule against perpetuities. It is claimed that the appointment imposes no restraint upon alienation, but that if it does so the restraint is void. Trusts whereby the income from property, real or personal, may be required to be paid to a beneficiary but shall be beyond his control and beyond the reach of his creditors while in the hands of the trustee may be created and will be sustained by the courts. (*Steib* v. *Whitehead,* 111 Ill. 247; *Wagner* v. *Wagner,* 244 id. 101; *Broadway Nat. Bank* v. *Adams,* 133 Mass. 170; *Nichols* v. *Eaton,* 91 U. S. 716.) The trusts in favor of the daughters for their respective lives were so qualified. While the will does not expressly state that the income shall not be subject to alienation by the beneficiary it does states that the income shall be paid to each one directly, which means with-

out the intervention of any medium, agent or go-between, and not only for her separate use and benefit, free and exempt from the power and control of her husband, but also from liabilities for any debts or engagements. There could be no such exemption from liability for debt if the beneficiary could convey or assign the income, for if she could do so it could also be seized in execution or attachment or reached by a creditor's bill. The intention of the testator determines the construction of the will, and it is not necessary that a restriction upon alienation shall appear in express terms if the intention is clearly to be gathered from the instrument. (*Wagner* v. *Wagner, supra; Smith* v. *Towen,* 69 Md. 77; *Grothe's Appeal,* 135 Pa. 586.) The only object the testator could have had in creating the trust was to secure to his daughters the personal receipt in their own hands of the net income of the estate without interference from their husbands or any creditor, and this object would be entirely defeated if they might immediately convey the property and assign the income. It was clearly the testator's intention that his daughters should not have the power to alienate the income during their lives. Is the restriction valid?

The rule against perpetuities is, that every interest dependent upon a condition precedent must vest within a life or lives in being at the creation of the interest and twenty-one years, and if the terms of the creation of the interest are such that a violation of the rule may possibly happen the interest fails. (*Quinlan* v. *Wickman,* 233 Ill. 39.) It is contended that a restriction upon the alienation of property beyond this period takes the property out of commerce and is also void. The restriction does not, however, in this case extend beyond that period. The three daughters of William Swaim in whose favor the trust was created were living at James Swaim's death, and if he had devised the estate after William Swaim's death directly in trust for those daughters by name the limitation could not be said

to have offended the rule against perpetuities. The effect of the exercise of the power by William Swaim was the same as if the trusts declared had been written in the will of James Swaim, and their validity must be judged upon the basis of the facts existing at that time. (*Lawrence's Estate, supra; Powell's Trusts,* 39 L. J. Eq. 188; Gray on Perpetuities, sec. 526, *et seq.*) If it was lawful for James Swaim to devise this land after the life estate to William Swaim in trust for his three living grand-daughters (naming them) for life, without the power of alienation, then it was lawful for him to confer the power to do so upon William Swaim, and if William executed the power, the effect would be the same as if the provision had been contained in the will of James Swaim originally. James Swaim's will gave William Swaim the right to declare trusts in favor of his daughters upon such limitations as he might deem necessary to secure the use of the property to them. This was a lawful power, the exercise of which did not necessarily involve any offense against the rule against perpetuities even though such exercise were in favor of children born after James Swaim's death or the issue of such children. The power could only be exercised in William Swaim's lifetime and in favor of persons living at his death, so that the exercise of the power could not occur at a time beyond the limits of the rule, and the persons to whom the appointment could be made must be ascertained within such limits. In his discretion William Swaim might have restricted the right of alienation to the period of twenty-one years after the death of the last survivor of his three daughters who were born in his father's lifetime. The mere possibility that a void appointment might be made under the power when the power may be completely executed in favor of all its objects without violating the rule will not invalidate an appointment which satisfies the rule. (Gray on Perpetuities, 510; *Lawrence's Estate, supra; Woodbridge* v. *Winslow,* 170 Mass. 388; *Stark* v. *Dakyns,* L. R. 10 Ch. App. 35;

*Attenborough* v. *Attenborough,* 1 Kay & J. 296; *Griffith* v. *Pownall,* 13 Sim. 393.) The direct purpose of the power is not to create a perpetuity, and as the exercise of it is left to the discretion of the donee, the security against the violation of the rule against perpetuities is in the failure of any disposition which results from the abuse of that discretion. (Lewis on Perpetuities, 487.) The trusts in William Swaim's will were created with reference to the actual fact that his only children were his daughters who were living at his father's death. If he had had children born subsequently a different rule might have applied, and in that case he would, perhaps, have declared different trusts, but the fact being that the only persons in whose favor trusts were or could be declared were lives in being in his father's lifetime, he established in favor of each of them, by name, trusts which would have been valid if included in his father's will,—that is, trusts in favor of each of them for life,—disregarding here the attempt to extend the trusts, under certain circumstances, beyond their lives, which we have already seen was in excess of the power. The exercise of the power did not, under any circumstances, require a violation of the rule against perpetuities, and as it was actually exercised did not involve any violation of the rule, and the appointment was therefore valid.

It is argued that the attempted restraint on alienation is void because the children of William Swaim took a vested legal estate in fee under the will of James Swaim and the entire legal interest under the supposed trust for their lives, and that James Swaim having devised the property in fee to his grandchildren, was powerless to impose any restraint on its alienation. It is true that as a general rule any limitation restraining an owner in fee simple from selling his land is bad, but it is said in *Johnson* v. *Preston,* 226 Ill. 447, which is cited by the appellant's counsel, that there is an apparent exception to this rule where what is known as a spendthrift trust is created. The devise in that case was

stated to bear no resemblance to a spendthrift trust, and it was therefore not decided there whether cases of that character were an exception to the general rule. In this case, however, active duties were imposed upon the trustees and the trust is a spendthrift trust. We have already seen that such trusts will be sustained and the restriction upon alienation enforced during the life of a devisee for life. There is no reason for such a rule in the case of a life estate which does not apply equally to a fee during the life of the owner. In *Nichols* v. *Eaton, supra,* it was said by the Supreme Court of the United States: "Nor do we see any reason in the recognized nature and tenure of property and its transfer by will why a testator who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use,—of uninterrupted benefit of the gift during the life of the donee. Why a parent, or one who loves another and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune and even his own improvidence or incapacity for self-protection, should not be permitted to do so is not readily perceived." The fact that the payment of the income is not left to the discretion of the trustees and that the beneficiaries are absolutely entitled to receive it does not affect the question, for a condition that the income shall be beyond the control of the beneficiaries and the reach of their creditors while in the hands of the trustees being lawful, the right to receive the money cannot be reached by creditors. *Broadway Nat. Bank* v. *Adams, supra.*

By the death of Mrs. Battanchon and the settlement of the litigation in Pennsylvania, Amelia Ellery became entitled, besides the one-sixth of the estate held in trust for her life, to 2/108ths in fee from the share of her deceased sister. She made a warranty deed of all her right, title and interest in the lands to the appellant, meaning to convey an

undivided one-sixth interest, as the deed stated. The decree found the appellant's one-sixth interest subject to the trust, which required the payment of all the income to Mrs. Ellery, and awarded the 2/108ths to Mrs. Ellery absolutely. The deed purported to convey the one-sixth without any incumbrance, and the grantee is therefore entitled to that part of her interest in the lands which is unincumbered and enough more of the lands subject to the trust to make up one-sixth.

The appellees contend that the appellant in his answer claimed no part of the land included in the Battanchon agreement and assigned no error upon the finding of the court that Amelia Ellery had an estate in fee in 2/108ths of the land. The appellant's answer claimed that the Battanchon agreement did not affect the real estate involved,— that is, that he was claiming independently of the Battanchon agreement. He claimed a sixth of the land free from any trust and assigned as error that the court erred in finding that Amelia Ellery's deed conveyed to him only her equitable interest.

The court erred in decreeing that Amelia Ellery was entitled to 2/108ths of the land and that the appellant was entitled to the one-sixth part subject to the trust in favor of Amelia Ellery. The decree should find the appellant the owner of 2/108ths in fee subject to the leasehold interests and of 16/108ths subject to the leasehold interests and the payment of the income to Amelia Ellery during her life, in accordance with the trust; that the trustees should pay to Amelia Ellery, during her life, the income from one-sixth part of the estate, and that, subject to the trust and the leasehold interests, the fee simple of 2/108ths of the estate is in Amelia Ellery.

The decree will be reversed and the cause remanded, with directions to modify the decree accordingly.

*Reversed and remanded, with directions.*