## In the Matter of the Estate of HENRY EVANS, Deceased.

Surrogate's Court, New York County, December 27, 1937.

*O'Malley & Wilson,* for the Central Hanover Bank and Trust Company, as executor, etc., of Ernest Sturm, deceased executor, petitioner.

*Lamar Hardy,* for Carl J. Schmidlapp, as surviving trustee, and the Central Hanover Bank and Trust Company, as successor trustee.

*John S. Sheppard,* for David Rumsey, Jr., and Frances M. C. Rumsey, respondents.

*Sheppard & Seipp,* for Pearl K. Roberts and John K. Roberts, respondents.

*Schwartz & Frolich,* for Elizabeth B. Rumsey, as executrix, etc., of David Rumsey, deceased, Elizabeth B. Rumsey and James K. Polk, Jr., as trustee under a trust agreement.

*Ruth F. Sturm,* respondent, appearing in person.

*John F. X. Finn,* special guardian for Kenneth E. Sturm, infant.

*William B. Stitt,* special guardian for unknown next of kin of Henry Evans and Mary R. Evans and others.

*Philip J. Dunn,* special guardian for unknown next of kin as to apportionment of insurance contract payments.

FOLEY, S. Two forms of relief are sought in this application: (1) The vacatur of the decree of this court, dated April 25, 1928, settling the account and construing the will of the testator, and (2) a construction of the will *de novo.*

The application to vacate the prior decree is based on the contention that the court was without jurisdiction to construe the will in the accounting proceeding in which the decree was made.

By his will the testator created a trust of his residuary estate with direction for the payment of the income to his wife, Mary R. Evans, during her life. The remainder of this trust is disposed of in the following language:

" Upon the death of my wife, Mary R. Evans, I give, devise and bequeath the said remainder as follows:

" Seven sixteenths thereof to the next of kin of my wife, Mary R. Evans.

" One sixteenth part thereof to my next of kin.

" One sixteenth part thereof to Ernest Sturm, or if he be deceased, to his next of kin.

" One sixteenth part thereof to David Rumsey, or if he be deceased, to his next of kin.

" One sixteenth part thereof to Dr. S. J. Nilson, or if he be deceased, to his next of kin.

" One sixteenth part to Pearl K. Roberts, or if she be deceased, to her next of kin."

The remaining four-sixteenths were given to a corporate trustee with directions to pay the income in perpetuity to three charitable corporations: The United Hospital Fund of New York, The Hindman Settlement Schools and the Servants of Relief for Incurable Cancer.

The residuary estate of the testator composing this trust amounts to approximately $4,000,000. Each one-sixteenth share has, therefore, an approximate value of $250,000. In the prior proceeding the surrogate construed the will as making gifts of one-sixteenth of the remainder of the trust to the persons specifically named in the will — Ernest Sturm, David Rumsey, Dr. S. J. Nilson and Pearl K. Roberts — and that each of such gifts vested absolutely on the death of the testator. This fundamental question which has been once decided is again made the subject-matter of the controversy in this proceeding.

The pending litigation has assumed a proportion far beyond the simplicity of the questions involved. This situation is due in great part to the rancor and bitterness which have arisen between certain parties to the proceed ng, and is reflected in the excess of zeal of counsel and the unduly extended length of the briefs which have been submitted to the court.

In the hope of forever quieting the dispute as to the nature of the gift to the four named remaindermen, by my own decision or by review of the appellate courts I have determined to base my conclusions upon two grounds: *First*, that the decree of 1928 is binding and conclusive upon the persons who now seek to obtain a different construction of the will from that originally determined by the surrogate; and *second*, and without indication of the slightest doubt that the prior decree was *res adjudicata*, the surrogate will construe the will *de novo* in this proceeding.

The charge of lack of jurisdiction to make the prior decree requires a statement of the salient facts in the administration of the estate.

Mr. Evans died in 1924. His will was admitted to probate and letters testamentary were issued to Carl J. Schmidlapp and Ernest Sturm. The executors immediately instituted a proceeding to fix the transfer tax on the estate. In the tax proceeding the remainders in question to the four named remaindermen were taxed as vested in them.

The executors filed their first intermediate account in 1926. In the belief that the remainders in question were vested in the named remaindermen, no citation was issued to their presumptive or unknown next of kin. A decree judicially settling that account was made on July 7, 1926. On April 29, 1927, Carl J. Schmidlapp and Ernest Sturm filed their final account as executors and their intermediate account as trustees. Their petition for the judicial settlement of the accounts for the first time raised the question as to whether or not the remainders to the four named remaindermen were vested or contingent. The petition referred to the omission of the presumptive and unknown next of kin of the remaindermen as parties in the original accounting proceeding of 1926. The executors and trustees applied to reopen the prior decree so as to permit the making of a new decree which would be binding and conclusive upon all persons possibly interested in the estate and in the trust fund.

The body of the petition squarely raised the question of the construction of the will. Its pertinent provisions were set forth in full. It was stated that the accounting parties had been informed by their counsel that the construction of the disputed clause was open to question and that it was doubtful whether or not the gifts of the remainders were vested or contingent.

A citation was issued to the persons listed in the petition which included not only the designated remaindermen but also their presumptive living next of kin and any unknown next of kin. Of the presumptive living next of kin of the named remaindermen only one was an adult. The citation was served personally upon the known next of kin and by publication against the unknown next of kin. In accordance with the provisions of the Surrogate's Court Act, an attorney, qualified by long experience in general practice and by specialization in the law of estates, was designated to receive citation on behalf of the infant and unknown next of kin. He was subsequently appointed special guardian to protect their interests.

There was involved in the 1927 accounting proceeding not only the interpretation of the will, but a further question as to the allocation of stock dividends between principal and income and the determination of the rights therein of the life tenant and remaindermen. There was also involved the question of the amortization of a wasting asset having a capital value of over half a million dollars.

As the proceeding involved the final accounting of the executors, it was absolutely essential that all these questions be determined and that a binding and conclusive decree be made.

The petition and the citation plainly gave notice to every person brought into the proceeding that the status of the additional parties and the nature of the remainders in question were to be adjudicated. If the remainders were vested in the four designated remaindermen, their persumptive and unknown next of kin had no interest in the estate. If, on the other hand, these remainders were contintingent, the presumptive and unknown next of kin were entitled to assert their rights as to every item in the account affecting their interest as remaindermen. In this situation the special guardian of the presumptive and unknown next of kin filed objections to the account on behalf of his wards. In these objections the special guardian specifically requested a construction of the will as to the disputed remainder provisions. The matter was thereupon placed on the calendar for a hearing before the surrogate. The parties were heard on the issues raised. A decision was rendered disposing of the question of construction. The surrogate held the remainder was vested and not contingent, and that the gifts to the four named remaindermen who had survived the testator were vested in fee. The decision pointed out that the phrase " or if he be deceased to his next of kin " was clearly intended to provide for the contingency of the death of the named persons in the testator's lifetime, so as to prevent a lapse of the gift. It was not intended to provide for the contingency of death during the life of the beneficiary of the trust. Disposition was also made of other objections relating to the amortization of the wasting asset, the apportionment of the stock dividends and the true name of one of the charities inaccurately designated in the will. The share of the remainder to the next of kin of Mr. Evans was held to be vested in the persons of that class as of the date of his death. (*Matter of Evans*, N. Y. L. J. Feb. 4, 1928, p. 2184, not officially reported.) A subsequent decision in the same proceeding determined that the remainder to the next of kin of Mrs. Evans was contingent. (*Matter of Evans*, 135 Misc. 656.) A decree construing the will and settling the account was signed on April 25, 1928. No appeal was ever taken from that decree. It was thus acquiesced in as final by all parties until several years later when there occurred on December 22, 1936, the death of Ernest Sturm, one of the executors and remaindermen, and of David Rumsey, another remainderman, on January 5, 1937.

On this set of facts the executor of Ernest Sturm has instituted the pending application. It is contended that the court had no jurisdiction to construe the will in the prior proceeding because

neither the petition nor citation sought a construction of the will, and that it was not necessary for the court to construe the will in the accounting proceeding.

Neither of these contentions is supported by the facts and the applicable statutes and decisions. It is true that the citation and the final clause in the petition did not contain *in hæc verba* a prayer for the construction of the will. The body of the petition, however, is replete with requests for a construction, and adequately sets forth the necessity therefor. The citation specifically gave notice that the status of the additional parties was to be determined in the proceeding. All parties were cited to show cause why the final account of the executors and the intermediate account of the trustees should not be settled and why the prior accounting of 1926 " should not be opened so as to make parties to such proceeding certain additional parties interested in said estate and trust not cited in said proceedings, and why the decree of this court, dated July 7, 1926, settling said accounts dated March 10, 1926, should not be vacated in so far as it affects said additional parties and why said accounts * * * should not be judicially settled and allowed as to said additional parties." This language in the citation clearly indicated to the parties to the first accounting that the additional parties might have an interest in the estate. The parties to the first accounting were directed to show cause why the additional parties should not be brought in. The citation likewise gave notice to the additional parties that their status as interested persons was to be adjudicated. An examination of the petition by the special guardian or attorney for any party cited would have demonstrated clearly that the status of the presumptive and unknown next of kin was to be determined and that such status depended upon a construction of the will.

A construction was necessary because (a) it was specifically requested by the special guardian and by the executors, and (b) because the filing of objections by the special guardian squarely raised the issue of the status of his wards as persons interested in the estate.

Long prior to the statutory revision of the practice of this court in 1914 it had jurisdiction to construe a will as to personal property in an accounting proceeding, when requested to do so by a party, or when such interpretation was necessary to determine the questions arising in the accounting. (*Garlock* v. *Vandevort*, 128 N. Y. 374; *Purdy* v. *Hayt*, 92 id. 446; *Matter of Verplanck*, 91 id. 439; *Riggs* v. *Cragg*, 89 id. 479.) Moreover, under the existing provisions of subdivision 8 of section 40 of the Surrogate's Court Act the surrogate had plenary jurisdiction to construe a will as to real

and personal property " whenever it is necessary to make such determination as to any will in a proceeding pending before him."

I have pointed out that the petition and citation raised the issue of the status of the presumptive and unknown next of kin of the four named remaindermen. It, therefore, became absolutely necessary to determine this issue of status when the special guardian filed objections to the account on behalf of his wards.

There constantly arise in the course of business of the Surrogate's Court questions involving the status of persons entitled to appear in proceedings or to file objections to the probate of a will, or to compel the filing of an account or to file objections to an account. In each of these cases the duty is imposed upon the court to examine into the status of the person seeking an adjudication of his rights. In many of these cases arising after probate a construction becomes essential.

The authorities have uniformly held that the status of a party who asserts a right against an estate must be determined preliminarily to any adjudication on the merits of the issues raised by such party whose status is put in issue. (*Matter of Cook*, 244 N. Y. 63; *Matter of Davis*, 182 id. 468; *Matter of Wagner*, 119 id. 28; *Matter of Fox*, 166 App. Div. 718; *Matter of McGarren*, 112 id. 503; *Matter of Comins*, 9 id. 492; *Matter of Erlanger*, 136 Misc. 784; affd., 229 App. Div. 778.) The benefits of this salutary rule that status should be determined on the threshold of the proceeding are obvious. The operation of the rule avoids burdensome litigation instituted by persons having nebulous claims against estates and persons who may be classed as mere intruders.

It was, therefore, incumbent on the surrogate in the 1927 accounting to make an adjudication as to the status of the wards of the special guardian before proceeding with the trial and determination of the issues raised by the objections of the special guardian to the allocation of the stock dividends and the amortization of the wasting asset. This duty to determine status necessitated a construction of the will in that proceeding.

The decree of April 25, 1928, was, therefore, binding and conclusive upon all the parties.

A judgment in an action or a decree in a special proceeding is conclusive in a later one as to matters actually litigated therein and also as to any that might have been so litigated. (*Schuylkill Fuel Corporation* v. *Nieberg Realty Corp.*, 250 N. Y. 304.) The latter and usually more difficult phase of the problem of *res adjudicata* is not involved in this proceeding. The controversy as to the nature of the remainders was actually litigated in the 1927 accounting. The contentions of the various parties were heard, decision

was rendered and a decree was made from which no appeal was taken. The provisions of the decree are conclusive upon those who seek to attack it here. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, *supra; Griffin* v. *Keese*, 187 N. Y. 454; *Loeb* v. *Hasslacher*, 209 App. Div. 58; *Matter of Tilden*, 98 N. Y. 434.) Finality can only be obtained by preserving the sanctity of the decree. (*Matter of Gilford*, 155 Misc. 339; affd., 247 App. Div. 782.) The solemn decree of a court should not be lightly or arbitrarily set aside at the instance of a party who has not availed himself of the right of review provided for in the statutes. (*Matter of Hawley*, 100 N. Y. 206.)

The persons seeking the vacatur of the prior decree and asserting lack of jurisdiction have devoted most of their efforts to the contention that it was not necessary for the court to construe the will in the 1927 accounting. Many of the authorities cited by them were cases where a construction of the will was specifically asked but where the question of interpretation raised was presently academic and an adjudication was postponed until a future date. In all of these cases a determination was sought as to the identity of the contingent remaindermen who would take on the death of the life tenant. The courts properly postponed the adjudication of this question pending the happening of the actual event on which the rights of the remaindermen to receive the trust corpus depended. Cases of this nature, as *Matter of Mount* (185 N. Y. 162) and *Matter of Hance* (180 N. Y. Supp. 269; affd., 192 App. Div. 904), have no application to the situation in the prior accounting. The question in those cases, presented before the termination of the trust, was as to whether two different groups of persons might answer the description of contingent remaindermen at the occurrence of the future event fixed by the testator. A present determination was, therefore, academic and unnecessary. The question here was whether the remainders had already vested in fee at the death of Mr. Evans. Aside from the reasons already stated for the necessity of construing the will in the 1927 accounting, the propriety of making a determination at that time is apparent. The four named remaindermen were entitled to know whether or not their interest in the estate was indefeasibly vested. The knowledge of this fact was extremely important in the drawing of their own wills. If this valuable asset, worth approximately $250,000, could be disposed of by them by will or deed their own testamentary plan would be affected. If they did not own the asset a different plan of distribution might be made. Problems of inheritance taxation would necessarily have to be considered by the draftsmen of their wills. Moreover, their very mode of living would be unquestion-

ably affected by the knowledge that they owned in title this valuable asset which would come into their possession on the death of Mrs. Evans. These factors furnished persuasive reasons for a prompt adjudication of the rights of the parties.

The occurrences since the prior construction of the will illustrate the importance of an early determination as to whether the gifts of the remainders were vested or contingent. Subsequent to the construction of the will, David Rumsey, one of the named remaindermen, executed a deed of trust in which his vested interest in the remainder was conveyed. Since the death of Ernest Sturm in 1936 a problem of inheritance taxation has arisen in his estate. In this connection the inconsistency of the position taken by Sturm's executor in making this application should be pointed out. In the prior construction it was adjudicated that Mr. Sturm had a vested interest in one-sixteenth of the remainder. His executor was under a duty to seek to uphold that adjudication rather than to attempt to set it aside or to contend that the remainder interest did not pass under his will. Loyalty and the legal obligation imposed upon a fiduciary required his executor to include assets in the estate of Ernest Sturm and not to attempt to exclude them. If Mr. Sturm were living today he could not assert anew that his remainder interest was not vested. He was one of the petitioners in the 1927 accounting proceeding. He accepted as final a decision of vesting which was highly favorable to him. The decree was conclusive as to him. His executor is estopped by his conduct. (*Pray* v. *Hegeman*, 98 N. Y. 351.)

It might be finally stated on this phase of the application that this is not a case where an adjudication was made without notice to a party seeking to attack it. The very parties who now ask for the vacatur of the prior decree and those associated with them, who are either infants or former infants, made exactly the same contentions as to the construction of the will, through their representatives, as are now made. They had their day in court. No appeal was taken. They cannot now reopen a question fully litigated and decided nor avoid the effect of the determination which was adverse to them. (*Matter of McGoughran*, 124 App. Div. 312, 316; *Matter of Goldsticker*, 192 N. Y. 35.) The prior decree is *res adjudicata*.

Irrespective of the conclusiveness of the prior decree and without entertaining the slightest doubt that the decree is *res adjudicata* on the question of construction, the surrogate will construe the provisions of the will *de novo* in the hope of terminating, if indeed possible, the attacks on the will of this decedent.

Without application of any canon of construction or rule of property to the will, the intent of the testator to make a vested gift of the remainder to the four named remaindermen is extremely clear. These remaindermen were his friends and business associates. They were the real objects of his bounty and not some vague class of persons who might be the next of kin, near or remote, of these friends and business associates as of the death of the widow. Some of the immediate relatives of the four named remaindermen may have been known to the testator, but the next of kin of a living person constitute a shifting class, the members of which are only determinable at a future time. It would be absurd to impute to this testator an intent to benefit remote relatives of his friends and associates of whose very existence he was unaware. This is particularly true where, as here, the members of the indefinite class would be absolute strangers to the blood of the testator.

The phrase subsequent to the name of the remainderman, " or if he be deceased to his next of kin," was plainly included in the will to prevent a lapse of the gift and consequent intestacy in the event that any of the named remaindermen predeceased the testator.

In addition to the plain evidence of intent, the appropriate rules of construction when applied to the language of the will confirm the conclusion that the remainders in question vested on the testator's death. No rule is more frequently referred to than that the law favors the vesting of estates. (*Matter of Watson*, 262 N. Y. 284; *Connelly* v. *O'Brien*, 166 id. 406; *Hersee* v. *Simpson*, 154 id. 496.) " A remainder is not to be considered as contingent in any case where it may fairly be construed to be vested, since the law favors the vesting of estates." (*Connelly* v. *O'Brien, supra*, p. 408.)

In addition to this rule the courts have repeatedly held that a clause referring to the contingency of the death of a beneficiary refers to death in the lifetime of the testator and where the designated person survives the testator his interest vests in fee. In an unbroken line of decisions from *Moore* v. *Lyons* (25 Wend. 119) to *Dunkel* v. *Homindustries, Inc.* (275 N. Y. 327) this rule has been followed. (*Livingston* v. *Greene*, 52 N. Y. 118; *Kelly* v. *Kelly*, 61 id. 47; *Embury* v. *Sheldon*, 68 id. 227; *Matter of Mahan*, 98 id. 372; *Quackenbos* v. *Kingsland*, 102 id. 128; *Matter of Tienken*, 131 id. 391; *Washbon* v. *Cope*, 144 id. 287; *Matter of Russel*, 168 id. 169; *Erwin* v. *Waterbury*, 186 App. Div. 569; affd., 231 N. Y. 592.)

It is presented in its simplest form in a present gift to A for life with remainder to B, or if B be deceased, to C. If B survives the testator his interest is absolutely vested. C can only take in the event that B predeceased the testator. The language of the present

will exactly parallels the illustration of this simple case. It is almost parallel in context with that in the leading case of *Livingston* v. *Greene* (52 N. Y. 118).

It is true that this general rule that the death referred to in the will is death in the lifetime of the testator, yields to facts or circumstances or language in the will indicating a different intention. This exception to the general rule is one of the finer distinctions employed by the courts in the solution of problems involving vested or contingent remainders. Its application usually follows rather than precedes a finding that the testator intended postponement of vesting. As is pointed out in *Erwin* v. *Waterbury* (*supra*) and *Washbon* v. *Cope* (*supra*) this modification of the general rule is usually made where the gift over is dependent on the death of the primary remaindermen *without issue*. There is no such language in the present will nor is there any indication of an intent to depart from the general rule stated above. In this connection it should be pointed out that counsel referred to the citation of *Vanderzee* v. *Slingerland* (103 N. Y. 47) in the prior decision of the surrogate as an indication that the prior determination was erroneous. It is interesting to note that *Vanderzee* v. *Slingerland* (*supra*) was cited by Judge LEHMAN in *Dunkel* v. *Homindustries, Inc.* (275 N. Y. 327, 335) as authority for a finding that death in the lifetime of the testator only was intended, and that the remainder was vested in fee.

Two further canons of construction confirm the determination that the remainders in question vested on the death of the testator. *First,* words of present gift in reference to a remainder are strong evidence of an intention that the remainder is to vest on the death of the testator. (*Connelly* v. *O'Brien*, 166 N. Y. 406, 409; *Matter of Seaman,* 147 id. 69; *Matter of Nedham,* 192 App. Div. 170; *Spicer* v. *Connor,* 148 id. 334.) Mr. Evans said, " I give, devise and bequeath." *Second,* the gift of the remainder, as in the pending proceeding, to persons *nominatim* indicates an intention to give a vested interest to the named persons on the death of the testator. (*Matter of Soy,* 143 Misc. 217, and cases therein cited.)

The concurrent operation of these two rules in this estate lead to the inevitable conclusion that the remainders vested on the death of the testator.

The language and reasoning of Mr. Justice THOMAS in *Matter of Lamb* (182 App. Div. 180; affd., 224 N. Y. 577) are also applicable to the construction of the present will. That case, which was unanimously affirmed by the Court of Appeals, would be sufficient authority alone for a holding that the remainders in question were vested.

Numerous authorities have been cited by counsel advocating a construction that the remainders are contingent. In each of these cases the language of the will differs from that employed by this testator. In many of the cases the words of gift of the remainder are only found in a direction to divide and pay over, as in *Matter of Baer* (147 N. Y. 348). In others the remainder is given to a class, the members of which are determinable only at a time subsequent to the death of the testator. (*N. Y. Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93.) There have been cited many cases involving the exception to the general rule that the death referred to in the will is death in the lifetime of the testator. Typical of these cases are *Brown* v. *Gardner* (233 N. Y. 261) and *Matter of Farmers' Loan & Trust Co.* (189 id. 202). In other cases cited the general rule was held to yield to language indicating a different intent. In *Lyons* v. *Ostrander* (167 N. Y. 135) the gift over was to " the issue of such as may have died to take the share to which his, her or their parent would have been entitled." This language was held to indicate an intent that the death referred to was death in the lifetime of the beneficiary of the trust. In *Matter of Buechner* (226 N. Y. 440) the remainder was contingent because it was given to the children of the life tenant " living " upon his death. In *McLean* v. *McLean* (207 N. Y. 365) the remainder was given on two contingencies, (1) that the life tenant would die during the life of the children, in which event the remainder was to go to the children, or (2) that if any of the children should die his share should revert to his next of kin. The court held that this language indicated an intention to postpone absolute vesting until the death of the life tenant. It was obvious that the testator contemplated the death of one of the children during the continuation of the trust, and provided a substitutional gift in that event. None of these cases is in point or is applicable to the language of the will and the facts in this estate.

It has been argued that the gift of a fractional share of the remainder to the next of kin of the life tenant, which is necessarily contingent, is indicative of the nature of the gift to the four named remaindermen. The severance of the gifts of the remainder into fractional independent shares negatives this argument. In the grammatical order of the paragraph the gift immediately following that to the life tenant's next of kin is a gift of a fractional share of the remainder to the testator's next of kin, which clearly vested on his death. Then follow the four shares in dispute here. Sequence, contiguity and logic sustain their similarity of character.

I do not find the slightest evidence in this will of any purpose of Henry Evans to require that any one of his designated friends should have to survive his wife before they became vested **with a**

share of his estate. All the indications of purpose are to the contrary. (*Dunkel* v. *Homindustries, Inc.,* 275 N. Y. 327, 335.) The remainders were absolutely vested on the death of the testator.

In the exercise of the discretion of the surrogate costs will be taxed against the petitioning estate, and costs and allowances will be denied to the unsuccessful parties.

Tax costs and submit decree on notice denying the application to vacate the prior decree, which is determined to be *res adjudicata*, and construing the will in accordance with this decision.