In the Matter of the Petition of THE NATIONAL CITY BANK OF NEW YORK to Render and Settle Its Intermediate Account as Executor-Trustee of JOHN JAMES MONTGOMERY, Deceased.*

IDA LILLIAN MONTGOMERY, Individually and as Administratrix c. t. a. of the Estate of HARRY C. MONTGOMERY, Deceased, Appellant; ROBERT WALKER MONTGOMERY and JOHN RENWICK MONTGOMERY, and NATIONAL CITY BANK OF NEW YORK, as Executor and Trustee, etc., of JOHN JAMES MONTGOMERY, Deceased, Respondents.

Second Department, November 20, 1939.

* Revg. 166 Misc. 347.

*Eugene Morgan Hawkins*, for the appellant.

*Sebastian P. Caputi*, for the respondents Robert W. Montgomery and John Renwick Montgomery.

*James E. Bennet, Jr.*, for the respondent National City Bank of New York, executor and trustee, etc.

HAGARTY, J. On the 11th day of January, 1935, John James Montgomery died leaving a will providing for a trust fund of the residuary estate, that the income should be payable to his widow for life, and that upon the death of his widow the trust should terminate, and that the trustee should sell and dispose of the corpus of the fund and pay therefrom the sum of $1,000 to each of two grandchildren, " and the remainder shall be equally divided and paid to my sons Harry C. Montgomery, Robert Walker Montgomery and John Renwick Montgomery, or their survivors." Harry C. Montgomery survived the testator but not the life tenant. The life tenant is still living. The question presented involves the right of the estate of Harry C. Montgomery to share in the residue. By the decree under review it is excluded from participation.

There is no language in this will which requires a departure from the well-settled rule that, ordinarily, a requirement of survivorship of a remainderman imposed by the testator refers to the death of the testator and not to the death of the life tenant. On the contrary, the testator provides that, with respect to the general and specific legacies and the payments from the remainder to his grandchildren, the question of survivorship should be determined by and at the time of his death, *i. e.*, as he expresses it, " die before me." Furthermore, if the pertinent language here were construed as requiring the remaindermen to survive the life tenant, intestacy would result if the life tenant survived the other two sons of an earlier marriage, who are well advanced in years. While the language of the will is that the remainder " shall be equally divided and paid to," as distinguished from words of direct gift, vesting is not thereby affected. (*Matter of Banker*, 223 App. Div. 496, 501; affd., 248 N. Y. 596; *Roosa* v. *Harrington*, 171 id. 341, 353; *Matter of Mahan*, 98 id. 372, 376.) The designation of the three sons by name is an effective element in the determination of the intent of the testator that the remainder should vest in the sons on their survival of the testator. (*Moore* v. *Lyons*, 25 Wend. 119, 150; *Matter of Weaver*, 253 App. Div. 24, 27; affd., 278 N. Y. 605; *Matter of McParlan*, 169 Misc. 1027, 1029. Cf. *Matter of Watson*, 262 N. Y. 284, 299, 300; *Connelly* v. *O'Brien*, 166 id. 406.)

The construction of the language of the will by the learned surrogate apparently resulted from his erroneous assumption that

Harry C. Montgomery had been married to Clara Louise Montgomery. It was error to deny the appellant's motion for a rehearing on the basis of a stipulation of the parties to the effect that Clara Louise Montgomery is the widow of Elbert Wilson Montgomery, a son who had predeceased the testator. That stipulation, of March 11, 1938, as well as the earlier one, dated February 9, 1938, will be received as documentary evidence. (Surr. Ct. Act, § 309.)

The decree should be reversed on the law and the facts, with costs to all parties payable out of the estate, and the matter remitted to the Surrogate's Court for the making of a new decree in conformity with this opinion and containing an adjudication that Harry C. Montgomery had a vested interest in the remainder and for appropriate provisions in the decree settling the account in accordance with such construction. The decree should also include a recital of the stipulations of the parties entered into on February 9, 1938, and March 11, 1938.

CLOSE, J., concurs; LAZANSKY, P. J., concurs, with memorandum; TAYLOR, J., with whom JOHNSTON, J., concurs, dissents in opinion and votes to affirm the decree.

LAZANSKY, P. J., concurs, with the following memorandum: If there were doubt that the testator referred to his own lifetime as the period of survivorship in the case of gifts to the sons, it would disappear in the face of the fact that the gifts to the grandchildren are made expressly subject to survival of testator and, in the absence of language referring to the gifts to the sons clearly indicating that the period meant was the life tenant's life, it should be held that the lifetime of the testator was intended as the period of survival. No reason for differentiating between the two classes is indicated.

TAYLOR, J. (dissenting). The decedent died testate January 11, 1935. He executed his will on May 10, 1932. It was duly admitted to probate. Therein he directed payment of debts and funeral expenses, made certain pecuniary bequests and provided for the disposition of the residue as follows:

" *Fourth.* All the rest, residue and remainder of my property, of whatsoever kind and wheresoever situate of which I may die seized or possessed, or in which I may be interested in any way at the time of my death, I hereby give, devise and bequeath to The National City Bank, which now has a branch at 54th Street and Fifth Avenue, Brooklyn, New York, my executor hereinafter named, IN TRUST, nevertheless for the following uses and purposes, to wit — to invest and re-invest, sell, mortgage, manage, lease and otherwise deal in for the purpose of producing revenue and to pay the

net income thereof to my beloved wife, Annie Noble Montgomery, in monthly installments, if that is possible, during the term of her natural life, and upon her death then the said TRUST is to cease and terminate and my Trustee shall thereupon, as soon as is reasonably convenient, sell and dispose of all said property in its possession, both real and personal and from the said proceeds pay to my grandson, John Renwick Montgomery the sum of One Thousand Dollars ($1,000.00) and to my grand-daughter Lulu H. Patterson the sum of One Thousand Dollars ($1,000.00) and the remainder shall be equally divided and paid to my sons Harry C. Montgomery, Robert Walker Montgomery and John Renwick Montgomery, or their survivors, Provided, however, that should either my grandson John Renwick Montgomery, or my granddaughter Lulu H. Patterson die before me then I give and bequeath their portion above mentioned, namely $1,000.00 each, to their issue, if any, — otherwise the bequest is to lapse and be added to the portion to be received by my sons.

" Also Provided that if my said wife, Annie Noble Montgomery desires she may remain in full possession of my house at 457–56th Street, Brooklyn, New York rent free."

The proper construction of this clause is the sole question before us. The undisputed facts are the subject of two stipulations, one of which was before the learned surrogate prior to his determination. To the other, in the record and more detailed, we may also resort. (Surr. Ct. Act, § 309.) The testator, John James Montgomery, was married twice — first in 1871. His first wife, whose name does not appear, died in 1912. Four sons constituted the issue of this marriage — Harry C. Montgomery, born September 29, 1872, deceased, testate, August 14, 1937; Robert Walker Montgomery, born May 13, 1875, still living; John Renwick Montgomery, born February 7, 1883, still living; and Elbert Wilson Montgomery, born July 8, 1877, deceased October, 1919. Harry C. Montgomery married Carrie Loeb in 1892; she died in 1903, leaving surviving her husband and two children, John Renwick Montgomery, born June 30, 1892, and Lulu H. Patterson, born August 17, 1894, who are legatees, each in the sum of $1,000, named in clause " Fourth." Harry C. Montgomery married Ida Lillian Montgomery, the appellant, his second wife, on November 3, 1913; upon his decease on August 14, 1937, he left her surviving. There was no issue of this marriage. Elbert Wilson Montgomery, son of testator, not mentioned in his will, married Clara Louise Rice (Montgomery) about 1905 and died in October, 1919, leaving his widow surviving, but no issue. Clara is the recipient of a legacy of $3,000, mentioned in clause " Second " of the will under construction; and is also the

daughter of Annie Noble Montgomery, the testator's second wife, to whom testator was married on September 16, 1913, and who survived testator and is the life beneficiary mentioned in clause "Fourth" (*supra*) of testator's will. She is still living at the age of seventy-eight years. There is no issue of her marriage with testator. The learned surrogate in his opinion inadvertently founded some of his reasoning upon the erroneous assumption that Clara was the widow of Harry C. Montgomery, deceased. That error, however, in my opinion, does not affect the validity of his conclusion.

As indicated, when the testator made his will on May 10, 1932, and also when he died on January 11, 1935, he had three living sons, Harry C., Robert Walker and John Renwick. Robert and John were unmarried. His son Elbert predeceased the testator.

Referring again to clause "Fourth," testator provided therein that upon the death of his widow (who is still living) the trust therein should cease and terminate and in effect directed that the trustee thereupon, as soon as reasonably convenient, should sell and dispose of the corpus and from the proceeds pay the two legacies, each in the sum of $1,000, to his grandchildren, and pay and divide the remainder equally "to my sons Harry C. Montgomery, Robert Walker Montgomery and John Renwick Montgomery, or their survivors," with the provision that if either grandchild die before him he gave the amount of its legacy to its issue, if any, otherwise such legacy was to lapse and was to be added to the portion to be received by his sons.

The surrogate concluded "that it was not the intent of the testator to confer any benefit upon Harry unless he lived until the time for possessory enjoyment arrived, and that the remainder of the trust, after payment of the two $1,000 legacies, will be payable to those of testator's sons who may be living at the time of the widow's death." In my opinion that conclusion is correct.

The remainder interests in clause "Fourth" were vested in the remaindermen as of the date of testator's death, subject to being divested, however, as to any remainderman's interest upon his death before the termination of the trust, thus not yet terminated, for the widow survives. Harry C. Montgomery's remainder interest has been divested because of his death after that of the testator but during the lifetime of the widow, the life beneficiary. We arrive at the same result if we hold that no interest will vest in any remainderman until the termination of the widow's life estate.

The appellant urges that the words of survivorship refer to the time of testator's death and not to the time of the death of the life tenant unless a contrary intention is expressed. She asserts that such intention is not expressed in the will, and invokes the authority

of *Matter of Evans* (165 Misc. 752, 762), and cases therein cited; *Matter of Weaver* (253 App. Div. 24; affd., 278 N. Y. 605); *Matter of Mahan* (98 id. 372, 376); *Matter of Wilkins* (155 Misc. 152) and *Matter of Walsh* (147 id. 103). She also calls attention to the familiar rule that the law favors the vesting of estates, and contends that the three sons of the testator acquired interests in the residue, vested in them at testator's death, subject only to the life estate of the widow, and refers to Real Property Law, section 40, which is discussed in *Matter of Weaver* (*supra*), and to *Matter of Watson* (262 N. Y. 284, 299).

It is to be recalled that no will has a brother (*Collister* v. *Fassitt*, 163 N. Y. 281, 286), and that there is a dominant rule that " each will is to be construed by itself and depends for its meaning largely upon its own context and subject matter." (See *Matter of Spitzmiller*, 96 Misc. 381, 384.)

There is no doubt of the vitality of the principle, or that the courts have held that a clause referring to the death of a beneficiary contemplates the latter's death in the lifetime of the testator. (*Matter of Evans*, *supra*, and numerous cases there cited.) In the last-mentioned case Surrogate FOLEY stated, however (at p. 763), that " It is true that this general rule that the death referred to in the will is death in the lifetime of the testator, yields to facts or circumstances or language in the will indicating a different intention." He called attention, also (p. 763), to the fact that " words of present gift in reference to a remainder are strong evidence of an intention that the remainder is to vest on the death of the testator."

In clause " Fourth " (*supra*) no such words are found. The clause provides, in a way wholly inconsistent with the notion of absolute vesting as of the date of the testator's death, that on the death of the life beneficiary " the said Trust is to cease and terminate " and thereupon " as soon as is reasonably convenient " the trustee is directed to sell the corpus, real and personal, pay the two $1,000 legacies to the grandchildren, whereupon " the remainder shall be equally divided and paid to my sons Harry * * *, Robert * * * and John * * *, or their survivors * * *." Clearly futurity is annexed to the disposition of this remainder. There is no present gift of it. The testator provided that the proceeds " shall be equally divided and paid " — after the death of the life tenant. Such a direction implies futurity and that survivorship at the time appointed for distribution is essential to the vesting of an interest in the subject-matter of the gift. This is clear. (*N. Y. Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93, 103.) Other cases which, in my opinion, support this construction are: *United States Trust Co.* v. *Peters* (180 App. Div. 186, 191; affd., without opinion, 224 N. Y. 626); *Matter of Farmers' L. & T.*

*Co.* (189 id. 202, 207), and *Matter of Burdsall* (128 Misc. 582 [SLATER, S.]; affd., on opinion below, 221 App. Div. 756). The effect of these authorities, which hold that where a devise of the fee is made to take effect in the future, upon the termination of an intervening life estate, with a substitutional gift to others in the event of the death of the devisee, is that the death referred to will be held to be death at any time prior to the termination of the life estate.

Typical of cases upon which the respondent-trustee relies is *Matter of Burdsall* (*supra*) in which Surrogate SLATER stated that the question was whether the remainder interest in the trust vested indefeasibly on the death of the testator or whether the vesting took place at the death of the life beneficiary. The surrogate held that whatever the interest might be designated, it was subject to being divested by the death of the remainderman prior to the death of the life beneficiary; that the substitutional gift was to a class of persons who were to be ascertained at the death of the trust beneficiary; and said (p. 584): " Where a gift of property is made to take effect in the future upon the termination of intervening life estates and a substitutional gift to others in the event of death, the death referred to will be held to be the death at any time prior to the termination of the life estate. ( *United States Trust Co.* v. *Peters,* 180 App. Div. 186; *Matter of Buttner,* 125 Misc. 224; mod. and affd., 215 App. Div. 62; mod. and affd., 243 N. Y. 1; *Weymann* v. *Weymann,* 82 App. Div. 342; *Clark* v. *Cammann,* 160 N. Y. 315.) " This court adopted Surrogate SLATER's opinion in affirming his determination (221 App. Div. 756).

The cases upon which the appellant relies to support her contention that Harry C. Montgomery took a vested remainder interest as of the time of the decedent's death are distinguishable because the wills therein construed contained words of gift which spoke *in præsenti,* and not *in futuro* as in the present will; and, therefore, they do not apply to testator's will, in which the direction is to divide and pay over at a future time. (*Matter of Weaver, supra.*)

I advise affirmance.

JOHNSTON, J., concurs with TAYLOR, J.

Decree of the Surrogate's Court of Kings county reversed on the law and the facts, with costs to all parties, payable out of the estate, and the matter remitted to the Surrogate's Court for the entry of a new decree containing an adjudication that Harry C. Montgomery had a vested interest in the remainder, and with appropriate provisions settling the account in accordance with such construction. The decree should also include a recital of the stipulations of the parties entered into on February 9, 1938, and March 11, 1938.