S. Samuel Di Falco, S.
The surviving cotrustee has submitted its account of a terminated trust and requests a construe *397 tion of the will and instructions for the disposition of the corpus thereof. Testator died on July 25, 1930 and his will was admitted on September 2, 1930. In paragraph sixth thereof, he created a trust of one half of his residuary estate for the benefit of his wife for life and directed that, ‘ ‘ upon her death, to pay the principal thereof, share and share alike, in equal proportions, free and discharged of any trust unto my children, Chance M. Vought, Jb. and Peteb Vought.” The income beneficiary died on October 14, 1965 and the trust terminated. Testator’s son, Chance M. Vought, Jr., had previously died on April 2, 1964 and his will was admitted in this court. Peter Vought is living and is entitled to one half of the corpus. The construction of the will and the question of the distribution involve only the other half of the trust directed to be paid to Chance M. Vought, Jr.
It appears that Chance M. Vought, Jr. executed instruments purporting to be bills of sale and assignments of his remainder interest as follows:
(a) On October 27,1959 to the Inheritance Estates Ltd. in the sum of $450,000;
(b) On October 27,1959 to the Allied Investment and Discount Corp. in the sum of $150,000 subject to the prior assignment;
(c) On January 8,1960 to Lex Co:, Inc. in the sum of $500,000 subject to the two prior assignments; and
(d) On August 11, 1960 to Leonard P. Levy, all his interest in the principal subject to the three prior assignments.
On the same date Lex Co., Inc. assigned all of its rights to Leonard P. Levy. Inheritance Estates Ltd., Allied Investment & Discount Corp. and Leonard P. Levy subsequently subassigned portions of their respective interests.
The part of paragraph seventh of the will which is involved in the construction herein reads as follows: “No assignment or order by any beneficiary by way of anticipation of any part of the income of the Trusts herein created shall be valid, but the income shall be paid by the Trustees direct to the person entitled to receive it or deposited for the beneficiary’s account or applied to his or her use, care, education, maintenance or support; the principal shall not be assignable, nor can the income or principal of said Trust funds become attached by garnishment or other legal proceedings while in the hands of the Trustees, except to the extent permitted by law. ’ ’
Petitioner states that it is uncertain as to what disposition it should make of the principal of the trust because of the following:
*398 (a) Testator’s will does not specifically provide for disposition in the event that his child, Chance M. Vought, Jr. predeceases the life ¡beneficiary;
(b) In the event that it is determined that a disposition of the remainder was made, then who is entitled thereto;
(c) In the event that it is determined that Chance M. Vought, Jr. had an interest in the principal of the trust before he died which was otherwise assignable, then that is the effect, if any, of the provision against assignment of principal in paragraph seventh of the will and the validity of each and every instrument purporting to assign an interest of the principal of the trust fund;
(d) In the event that the court should find that Chance M. Vought, Jr. did not have an interest in the trust which was otherwise assignable, then did the testator intend to make a gift of the remainder interest to those named children of himself living at the death of his wife, or whether any disposition is made in the will with respect to the portion of the principal designated for Chance M. Vought, Jr.!;
(e) In the event that it is determined that the portion of the principal designated for Chance M. Vought, Jr. is not disposed of by the will, then would the persons entitled in intestacy be determined:
(1) As to the date of testator’s death; or
(2) At the time of the death of Chance M. Vought, Jr.; or
(3) At the time of the death of the income beneficiary!
In the event that it is found that the children of Chance M. Vought, Jr. are entitled to distribution of the trust funds through representation or otherwise, then the question arises as to whether one of these children, Craig Vought, is entitled to share in such distribution for the reason that it is or may be claimed that Chance M. Vought, Jr. was illegally married to the mother of Craig Vought.
Upon the return of the citation, it was agreed that the question of the construction of the will and the determination of the persons entitled to the trust principal would be decided as preliminary questions. Numerous answers have been filed on the question of construction. Some urge that the remainder was vested in Chance M. Vought, Jr. at the date of the testator’s death, while others contend that the remainder is to be paid to his lawful issue. The answers of the assignees and sub-assignees allege that the prohibition against assignment in paragraph seventh of the will is void. The executor of the estate of Chance M. Vought, Jr., three special guardians and the general guardian of Craig Vought contend that the prohi *399 bition is valid. Subsequently an application by Eugenie A. Vought, widow of Chance M. Vought, Jr., to intervene was granted. She is a creditor of and a legatee named in the will of Chance M. Vought, Jr. whose estate, except for the controverted interest herein, is insolvent. She also alleges that "the prohibition against assignment in the will is valid. Edith Haig Vought, a former alleged wife of Chance M. Vought, Jr., and an alleged creditor of his estate was also granted permission to intervene. She claims to be a creditor by virtue of the breach of certain separation agreements between herself and Chance M. Vought, Jr. executed in 1951 and 1953. She alleges that Chance M. Vought, Jr. was insolvent on the dates upon which it is alleged he executed assignments of his remainder interest and for that reason they were fraudulently executed against her as a creditor.
The court determines that the remainder interest vested in Chance M. Vought, Jr. upon the date of the testator’s death. The remainder was given to testator’s two sons nominatim. No survivorship clause is contained in paragraph sixth of the will nor is there any alternative gift over of the remainder in the event that a remainderman predeceases the income beneficiary.
In Matter of Evans (165 Misc. 752, 762-763.) Surrogate Foley stated as follows:
“No rule is more frequently referred to than that the law favors the vesting of estates. (Matter of Watson, 262 N. Y. 284; Connelly v. O’Brien, 166 id. 406; Hersee v. Simpson, 154 id. 496.) 1 A remainder is not to be considered as contingent in
any case where it may fairly be construed to be vested, since the law favors the vesting of estates.’ (Connelly v. O’Brien, supra, p. 408.) ” (p. 762).
“ Two further canons of construction confirm the determination that the remainders in question vested on the death of the testator. First, words of present gift in reference to a remainder are strong evidence of an intention that the remainder is to vest on the death of the testator. (Connelly v. O’Brien, 166 N. Y. 406, 409; Matter of Seaman, 147 id. 69; Matter of Nedham, 192 App. Div. 170; Spicer v. Connor, 148 id. 334.) Mr. Evans said, ‘ I give, devise and bequeath. ’ Second, the gift of the remainder, as in the pending proceeding, to persons nominatim indicates an intention to give a vested interest to the named persons on the death of the testator. (Matter of Soy, 143 Misc. 217, and cases therein cited.) ” (p. 763).
This decision was affirmed in 258 App. Div. 1037 and 284 N. Y. 571.
*400 In Matter of Weaver (253 App. Div. 24, affd. 278 N. Y. 605) the Appellate Division in holding that the remainder was vested stated at page 27:
‘1 The language of this will was clear and unambiguous. The residue was bequeathed and devised to the testator’s three sisters, all of whom survived him, and not to the class. At testator’s death the gift to them was absolute because such residue vested in them immediately. The words of the will denote an absolute gift. There is no direction to divide and pay over, no contingency of any kind. The mere postponement of the enjoyment of a portion of such residue did not prevent the vesting thereof.
“ The law favors a vesting of estates and the same will be held to be vested at the death of the testator, unless the contrary direction is clearly expressed. (Stokes v. Weston, 142 N. Y. 433.) ’ ’ In the concurring opinion of Hill, P. J., he stated: 1 ‘ For reasons oft repeated, the law favors a construction where-under an estate vests and unless a contrary intention is unequivocally and definitely expressed in the will, it will not be imputed. There is no presumption that the testator intended to create a contingent remainder. (Matter of Chalmers, 264 N. Y. 239; Matter of Watson, 262 id. 284; Cammann v. Bailey, 210 id. 19; Connelly v. O’Brien, 166 id. 406; Hersee v. Simpson, 154 id. 496; Goebel v. Wolf, 113 id. 405.) The legacies given by the residuary clause of James E. Weaver’s will vested upon his death, the distribution being deferred as to that portion of which his widow had an intervening use.” (p. 29). (See, also, Matter of Krooss, 302 N. Y. 424,427; Matter of Campbell, 307 N. Y. 29, 34.)
In Matter of Finaly (20 Misc 2d 320, 321) this court stated: “ The language under consideration leaves no doubt but that the testator intended to create vested remainders in the remaindermen who survived him. The disposition of the trust principal after the death of the life beneficiary was to remaindermen nominatim without condition and without a gift over in the event of-their deaths. A-gift nominatim in and of itself always creates a strong inference that an immediate vesting of the estate was intended. (Matter of Montgomery, 258 App. Div. 64, 65, affd. 282 N. Y. 713; Healy v. Empire Trust Co., 276 App. Div. 305, 309, affd. 301 N. Y. 620; Matter of Cole, 17 Misc 2d 352.) ”
This theory of vesting is summarized in section 70 of volume 35 of New York Jurisprudence, as follows:
‘1 A gift of a remaider to a named person strongly indicates an intention on the part of the testator to create a remainder vesting in the named remainderman at the testator’s death, even *401 though the time of possessory enjoyment may be postponed. * * *
“ Asa general rule, a gift to A for life, remainder to B, vests a remainder interest in B indefensibly at the testator’s death. Thus, unless a contrary intention is manifested by the will, a remainder vests at the testator’s death where a gift is made to A for life, remainder to a designated person * * * in being, and such a remainder is not divested by the remainderman’s demise during the life estate.” (pp. 301-303).
The court is unable to agree with the contentions of the special guardians that the remainder did not vest in Chance M. Vought, Jr. at the time of his father’s death and would now be distributable to his issue. This determination that the remainder was vested in Chance M. Vought, Jr. brings us to the second question to be determined as to the validity of the assignments of his remainder interest executed by him.
Counsel for the various parties have stated that there is no reported New York case passing upon the validity of a prohibition against assignment of the principal of the trust. The applicable part of section 15 of the Personal Property Law, in effect at the time the assignments involved herein were executed, reads as follows: “1. The right of the beneficiary to enforce the performance of a trust to receive the income of personal property, and to apply it to the use of any person, can not be transferred by assignment or otherwise. But the right and interest of the beneficiary of any other trust in personal property * * * may be transferred.”
It prohibited any beneficiary entitled to the income of a trust from transferring it by assignment or otherwise. It did not prohibit the interest of the beneficiary of any other trust to be transferred.
At English common law both the income beneficiary and the remainderman were not barred from transferring an interest under a will. In commenting on the decision of the Supreme Court of Washington, in Milner v. Outcalt (36 Wn. 2d 720 [1950]) it was stated in the Washington Law Review (vol. 36, p. 141 [1951]):
“ The English Court of Chancery was the first to apply the common law rule forbidding restraints on the alienation of property to. defeat a spendthrift trust in Brandon v. Robinson, 18 Ves. Jr. 429, 134 Eng. Rep. 379 [1811] wherein Lord Eldon stated that property given in trust ‘ must remain subject to the incidents of property ’, and that consequently the direction that the beneficiary’s creditors could not reach the trust property was invalid. American courts have generally refused *402 to invalidate restraints on income-alienation although they follow the English cases with reference to restraining principal-alienation. See McCreery v. Johnston, 90 W. Va. 80, 110 S. E. 464 [1922] and Spann v. Carson, 123 S. C. 371, 116 S. E. 427 [1923] for the general flavor of these holdings. For the most part these courts state that while an equitable life estate in property may be restrained as a matter of policy, restraining an equitable fee simple violates the common law rule.
“ A minority of courts, now including Washington, reach a contrary result and allow the restraint on principal as well as income on what seems to be sounder reasoning. In the leading case of Broadway Bank v. Adams, 133 Mass. 170, 43 Am. Rep. 504 [1882], the court said, ‘ the reasons behind the [common law] rule do not apply in the case of a transfer of property in trust. * * * The trust property passes to the trustee with all its incidents and attributes unimpaired. He takes the legal title to the property, with the power of alienation; the cestui que trust takes the whole legal title to the accrued income at the moment it is paid over to him. Neither the principal or income is at any time inalienable. ’ In Erickson v. Erickson, 197 Minn. 71, 266 N. W. 161, 267 N. W. 426 [1936] it was said, ‘ the sounder doctrine upholds the validity of the spendthrift trust impressed upon the corpus of the estate. The legal title to the corpus is in the trustees * * * and they have the full right to transfer the corpus of the estate * * * so there is no restraint upon the transfer of the title * * #\ In Boston Safe Deposit & Trust Co. v. Collier, 222 Mass. 390, 111 N. E. 163 [1916] the court approved the restraint on alienation of principal, stating that any distinction was only a matter of degree. In another leading case, Nichols v. Eaton, 91 U. S. 716 [1876], the United States Supreme Court remarked that the rule forbidding restraints on principal-alienation in a spendthrift trust was ingrafted on the common law by the English Chancery for the benefit of creditors of the beneficiary; and based its approval, as in the instant case, on the ground that the intent of the settlor or testator should not be defeated. ’ ’
Nichols v. Eaton (91 U. S. 716) referred to the English doctrine and stated that it was not the doctrine of that court. It observed (p. 725): “ But, while we have thus attempted to show that Mrs. Eaton’s will is valid in all its parts upon the extremest doctrine of the English Chancery Court, we do not wish to have it understood that we accept the limitations which that court has placed upon the power of testamentary disposition of property by its owner. * * * This doctrine is one which the English Chancery Court has ingrafted upon the com *403 mon law for the benefit of creditors, and is comparatively of modern origin. We concede that there are limitations which public policy or general statutes impose upon all dispositions of property, such as those designed to prevent perpetuities and accumulations of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy peculiarly appropriate to the jurisdiction of courts of equity to protect creditors against frauds upon their rights, whether they be actual or constructive frauds. But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator’s affection or generosity, is one which we are not prepared to announce as the doctrine of this court.” At page 727 the court further stated: “ Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who gives, who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived.”
'The adoption in 1828 of the predecessor of section 15 of the Personal Property Law prohibiting an income beneficiary from assigning his interest was therefore in derogation of the common law of this State which had been following the English rule. The assignees and subassignees herein contend that section 15 of the Personal Property Law, therefore, should be strictly construed and that the old rule permitting assignment of principal has continued in existence as the section does not explicitly prohibit such transactions.
Spendthrift trusts are justified on the basis of cujus est dare, ejus. est disponere. “ The purpose of statutes relating to indestructible trusts was to permit a testator to make secure provision for the support and maintenance of an improvident person for life and to place it beyond the reach of such person or his creditors to defeat the purposes of the trust by alienating and squandering the principal”; citing Matter of Wentworth (230 N. Y. 176); Matter of Renn (177 Misc. 195) and Matter of Knauss (204 Misc. 207). (Second Report of the Tern *404 porary State Commission on the Modernization, Revision and Simplification of the Law of Estates [1963], p. 461.)
In Matter of Wentworth (230 N. Y. 176) the court was considering whether the interest of the beneficiary was inalienable by the statute in effect in 1901 when the will was probated and which read as follows: ‘ ‘ The right of a beneficiary of an express trust to receive rents and profits of real property and apply them to the use of any person, can not be transferred by assignment or otherwise, but the right and interest of the beneficiary of any other trust in real property may be transferred.” (p. 184). The court stated the purpose of the statute to be as follows: ‘ ‘ The purpose of the testatrix was to create a trust for the support and maintenance during life of a relative to whom, for various reasons appearing in the evidence, she could not make a devise of the principal. The purpose of the statute as has been stated over and over again was to permit a testator thus to make secure provision for the support and maintenance of an improvident person for life and to place it beyond the reach of such person or his creditors to defeat the purposes of the trust by alienating and squandering the principal. It seems to me that we should be reaching out in an attempt to avoid the purposes of this legislation, which has been deemed to be wise, if we should hold that a trust which in its fundamental purposes is clearly within the statute was nevertheless withdrawn from the protection thereof because of this additional, incidental discretionary power to add some principal to income when necessary to provide the desired support and maintenance.” (p. 185).
Spendthrift trusts are valid in 42 States either by statute or under case law. In New York State every trust for the application of income to any person for his use necessarily creates a spendthrift trust under section 15 of the Personal Property Law. In effect ‘ ‘ spendthrift trusts are compulsory in New York, with the attendant aspects of inalienability, indestructibility and limitations on the rights of creditors ” (Second Report [1963] of the Temporary Commission, (pp. 459-460.)
There is no doubt that section 15 of the Personal Property Law, by not prohibiting assignments of the principal of a trust, permits such assignments to be made. It was stated in Stringer v. Young (191 N. Y. 157) that the remainderman took a vested and alienable estate and interest in the share of the residuary estate (p. 166). In Bergmann v. Lord (194 N. Y. 70) the court held that the interest of Samuel GK Ward, Jr., in the fund so held in trust for his mother vested immediately upon the death of the testator, and was and is at all times transferable by assignment or otherwise. This court in Matter of Boissevain *405 (40 Misc 2d 237) stated that an assignment of principal is permissible, valid and effective and passes all of the interest of the assignor (p. 239).
The court concludes that the language used in section 15 of the Personal Property Law which does not specifically prohibit the alienation of principal, in contrast with the previous mandatory sentence relating to income, is merely permissive and is subject to a declaration to the contrary contained in a will. This court is in accord with the conclusion expressed in Broadway Nat. Bank v. Adams (133 Mass. 170,174) where the court stated: “ He [testator] has the entire jus disponendi, which imports that he may give it absolutely, or may impose any restrictions or fetters not repugnant to the nature of the estate which he gives.”
In Baker v. Vermont Bank & Trust Co. (342 F. 2d 12) the Court of Appeals, Second Circuit, upheld a judgment of a Vermont court that an assignment of a vested remainder under a trust indenture which was made before the assignor’s interest became possessory was avoided by the indenture’s spendthrift clause, and that the assignment could not prevent the trustee from carrying out its duty to distribute the assignor’s remainder share to her. The court stated (p. 14): ‘‘ The wording of the spendthrift clause in the * * * trust was explicit and complete. It embraced ‘ the interest of any beneficiary hereunder, either as to income or principal. ’ It did not affect or seek to prevent alienation after the interest of the remainderman vested in her, both in right and possession or enjoyment; but as the trial judge held, it did prevent the assignment of the remainderman’s interest during the life of the trust while her interest was vested in right only and not in possession or enjoyment. This is in accord with the trend of authority.”
Scott, Trusts (2d ed., 1956, vol. 2, § 153, pp. 1075-1076) reads: ‘ ‘ The question remains, however, whether a restraint on a beneficiary’s right to receive the principal in the future is valid. By the weight of authority today it is held that, in the absence of a statute providing otherwise, such a restraint is valid whether or not the beneficiary is entitled to the income in the meantime. The courts seem to feel that the protection of the beneficiary of a trust should extend not merely to his right to receive income but to his right to receive principal in the future, whether in the meantime he or another person is entitled to receive the income.”
The comment on subsection (1) of section 153 of the Restatement on the Law of Trusts (2d) is: “ Where a beneficiary *406 of a trust is entitled to receive the principal at some future time, a restraint on the voluntary or involuntary alienation of his interest is valid, whether or not he is entitled to receive the income in the meantime.” The illustration given reads as follows: ‘ ‘ A transfers $200,000 to B in trust to pay the income to O during C’s life and at C’s death to convey the principal to D. By the terms of the trust it is provided that D’s interest shall not be transferable by him or reachable by his creditors. The restraint on alienation is valid, and prior to C’s death D cannot transfer his interest and his creditors cannot reach it.”
In the absence of a statutory prohibition, there is no justification for depriving this testator, who had the right to give, from stating the disposition of the gift.
1‘ However it is the policy of the 'State that a testator should be permitted to make such disposition of his property as is not contrary to law. If he desired that alienation should in no case be permitted, he should be allowed to do so.” (Second Report [1963] of the Commission on Estates (p. 525.)
In commenting on the English Trustee Act [1925], the Commission on Estates, in its Second Report [1963] stated at page 520:
“It will be observed that this statute does not relate to an income interest, but only to an interest in the principal of the fund * # *. Although the statute itself does not say so, a testator or settlor may provide for the non-application of the statute.”
It appears that Michigan and New Hampshire prohibit a a restraint on the alienation or assignability of principal (Schrader v. Smith, 10 Misc 2d 475, 478 and Flanders v. Parker, 80 N. H. 566). Cf. Matter of Nicol (24 A D 2d 191, mod. 19 N Y 2d 207) where the Appellate Division of this Department was construing an indenture of trust under New Jersey Law. Paragraph tenth of the indenture read as follows: ‘ ‘ The beneficiaries of this trust are hereby restrained from selling, transferring, assigning, hypothecating or otherwise disposing of their respective interest in either the principal or income to be derived or to accrue therefrom or any part thereof, at any time before the said principal or income shall come into their possession under the terms of this Trust, and said respective interests of said beneficiaries in the principal or income of the said Trust as aforesaid, shall not be assignable, and shall not be subject to the claims of creditors of the said beneficiaries, or any of them.” The court stated that said paragraph “ expressly prevents assignment ” (p. 200).
*407 The court therefore determines that paragraph seventh of the will prohibited assignment of the principal of the trust and that the assignments thereof executed by Chance M. Vought, Jr. are void and unenforcible against the portion of the. trust principal payable to his estate. In accordance with the previous stipulation (N. Y. L. J., Sept. 23, 1966) objections, if any, to the account may be filed within 20 days after entry of an intermediate order hereon.